Gillespie and Wife v. Holland,

---

GILLESPIE AND WIFE v. HOLLAND.

FRAUD: CONFIDENTIAL RELATIONS. *Dealings between brother and sister.*

Mrs. Gillespie was a young woman recently come of age, living in the family of her brother, whom she regarded as her protector, though he had never been her guardian. She had been considered a member of his family; had assisted in domestic work and had been sent to school and maintained by her brother in a manner suitable to their conditions in society. She owned a tract of land which he had given her several years before. Being in contemplation of marriage and her brother having become insolvent, with a family to support, she, at his request, leased him the land for five years, receiving no rent except about half its value for the last two years; he agreeing, however, to put and keep the premises in good repair.

Gillespie and Wife v. Holland.

She had no other property. Afterwards she married her intended husband, and in a suit by them to set aside the lease as obtained by undue influence, Held: That the relations between them were of such reciprocal affection and confidence as imposed upon him the duty, as her protector, of advising against such a bounty to another or accepting it for himself, and the lease should be set aside.

*John C. Palmer* and *U. M. and G. B. Rose* for appellants.

All transactions between a guardian and one who has been his ward, or between a person just arrived of age and one standing *in loco parentis*, must be characterized by the utmost good faith, and the burden of proving fairness rests on the guardian or person standing *in loco parentis*. Such transactions will always be regarded with great jealousy by a Court of Equity, and if it appears that the slightest advantage has been taken of the weaker party, the court will annul the contract. *Story, Esq., Jur.*, secs. 317–18–19, 309; *Hylton v. Hylton*, 2 *Vesey, Sr.*, 547; *Hatch v. Hatch*, 9 *Vescy*, 292.

Gross inadequacy of consideration is almost conclusive of fraud.

*Thweatt and Quarles*, for Appellee.

STATEMENT.

*Eakin, J.*

Mrs. Gillespie, at the time of the transactions complained of, was a young woman, recently come of age, living in the family of her brother, the appellee, whom she regarded as her protector, although he had never been her guardian. She had been considered a member of the family, had assisted in the domestic work, and had been sent to school and maintained by her brother in a manner suitable to their position in society.

No charges had been made on either hand. She was the owner of an eighty acre tract of land, which, it seems,

Gillespie and Wife v. Holland.

had several years before been given to her by her brother.

In December, 1879, being then in contemplation of marriage, and her brother having become insolvent, she, at his request, and in consideration of his circumstances, executed to him a lease of said land for five years. No rent was reserved at all for the first three; and for the last two, only $100 per annum, which seems not to have been half the annual value. He agreed, however, on his part, "to put, and keep, the fences around said land in good repair; to keep the houses thereon in like good condition; and to cultivate the tillable land in a good farmerlike manner." She afterwards intermarried with Gillespie, and on the 5th of July, 1880, filed this bill to cancel the lease, upon the ground of undue influence. Save as to all that touches the undue influence, the material facts are admitted. The defense rests upon the ground that she acted intelligently and voluntarily; that she intended a benefit to her brother, with a full understanding of all the circumstances; and it is intimated that she would not have complained but for her husband As for him, he knew of the lease before the marriage, and there is no charge that the matter was in fraud of marital rights.

The Chancellor upon the hearing, dismissed the bill for want of equity, and an appeal was prayed.

Pending the appeal, on the 5th of November, 1881, a receiver was appointed, by this Court, to rent the lands and collect the rents then due. He reported on the 22d Dec., 1882, that he had been unable to find a suitable tenant for that year, but had rented a part of the land for $60, which he had collected. Out of this he was ordered to pay the taxes for '81 and '82, and has made no final report.

OPINION.

FRAUD—
Confidential
Relations.
Ever since the leading case of *Huguenin v. Bosely,* 14

*Vesey* 273, (see W. &. T.'s Leading Cases in Eq., Vol. II, Mar. p. 556) it has been the well established doctrine in equity, that contracts, and most especially gifts, will be scrutinized with the most jealous care, when made between parties who occupy such a confidential relation as to make it the duty of the person benefitted by the contract or bounty to guard and protect the interests of the other and to give such advice as would promote those interests. And this is not confined to cases where there is a legal controul, such as that which parents and guardians have over minors, or husbands over wives. Courts of Equity, with a broader view of human passions, emotions, and frailties, recognize the influences as passing beyond the fixed limits of majority, and as independent of legal incapacities. They are supposed to arise wherever there is a relation of dependence or confidence; especially that most unquestioning of all confidences which springs from affection on one side, and a trust in a reciprocal affection on the other. The cases for the application of the doctrine cannot be scheduled. They pervade all social and domestic life. The application may sometimes be harsh, and one might well wish that an exception could be made, but there is a higher policy which demands that it should be universal. The language of Lord Kingsdownein *Smith v. Kay*, 7 *H. of Lords Cases* 750, has been considered striking. He says that relief in equity will always be afforded against transactions in which "influence has been acquired and abused, in which confidence has been reposed and betrayed."

The leading case of *Huguenin v. Bozely* (*supra*) is one in which a woman in contemplation of her own marriage, made a voluntary settlement, by way of bounty, upon a clergyman and his family, under whose influence and advice she had been acting in the management of her affairs.

Gillespie and Wife v. Holland.

The settlement was cancelled, upon the ground of the relations of confidence between the parties—the woman's implicit trust in the honour, integrity and fidelity of the clergyman, and not upon the formal ground of agency. In that case, too, the lady was perfectly aware of all she was doing and its consequences. She meant it all. The Court proceeded upon the ground that it was an injudicious conveyance of a large amount of property, for which no adequate services had been rendered, prompted by an extravagant gratitude for him and sympathy with his family, which the clergyman should have advised her against indulging for his benefit. Sir S. Romilly, arguing the case, made the celebrated remark, reported in italics in the Leading Cases, that "the relief stands upon a general principle applying to all the variety of relations in which domination may be exercised by one person over another."

Although the cases do not go to the extent of rendering void all gifts or bounties towards those having this influence, they do fully reach the position, that they will be avoided in all cases where they are of such a nature, as a judicious friend regarding the interests of the donor or obligor, would not have advised—for it is the duty of the one having the confidence to give precisely that advice, and decline the benefit. This principle has been heretofore applied by this Court in the case of relations dealing with ancestral property, and that is only one of its many-sided phases. *Million and wife v. Taylor*, 38 *Ark.* 428.

It appears in this case that the young woman was on the eve of marrying, and there is enough to justify the inference that she had little or no other property. Her brother stood to her *in loco parentis* and was her only proper adviser and protector. He had been evidently

Gillespie and Wife v. Holland.

very kind and affectionate, and had given her the very property in question. She sympathized with him in his condition of insolvency, with a family to support. The lease on her part was a natural and generous act. But it was made without the advise or consent of her intended husband; and from the relations existing between him and her brother it was likely to be distasteful to the former.

We cannot think, under the circumstances, he ought to have advised her to make such a lease to another, or to have accepted it himself. It deprived her and her intended husband of the use of it for five years, without any adequate compensation. It might be the germ of a discord, which his affection to his sister would, perhaps, on reflection, have prompted him to avert, at some sacrifice to himself, of a promised advantage.

The lease should have been cancelled, without accountability, however, for rents and profits before the property passed into the Receiver's hands, or compensation for fencing or repairs.

Reverse the decree and render a decree here, cancelling the lease and ordering a delivery of the property by the Receiver to complainants, Gillespie and wife. They will also be entitled to the nett balance of all moneys which have come to his hands together with outstanding notes or obligations for rent, if any. To this end the Receiver must render a final account here, till the coming in of which, all other matters are reserved.