5-3693                                397 S. W. 2d 798

Opinion delivered January 10, 1966

*Charles L. Carpenter* and *Virginia H. Ham,* for appellant.

No brief filed for Appellee.

CARLETON HARRIS, Chief Justice. Clarice Shetter Arnold died testate on November 25, 1963. She left surviving a husband, George A. Arnold, age 70, appellant herein, two sons, Tom Anders, a resident of Fullerton, California, and Bryant H. Anders, of Seattle, Washington, appellee herein. Two granddaughters and a grandson are also mentioned in her will. Following her demise, Arnold was appointed executor of the estate as provided in the will. This instrument purportedly devised real estate located at 407 West "J" to appellant, but title actually vested in Arnold for the reason that the property had been held as an estate by the entirety. This prop-

erty is legally described as Lot 3, Block 53, Park Hill Addition to the City of North Little Rock, and will hereafter be referred to as the Park Hill property. Mrs. Arnold devised to her son, Bryant Anders, real estate located at 111 East 23rd Street, legally described as Lot 12, Block 4, Wildberger's Addition to the City of North Little Rock. This property will be hereafter referred to as the 23rd Street property. Several other bequests were made to parties not involved in this appeal, and the residuary clause devises and bequeaths all remaining property to Mrs. Arnold's grandchildren. Mr. and Mrs. Arnold had been married ten years at the time of her death, and appellee is the stepson of appellant.

Appellee returned from Seattle to North Little Rock at the time of his mother's death, and lived with appellant until this litigation commenced. On December 4, 1963, Anders, as a single person, executed a warranty deed to Arnold, conveying certain property located on Lake Conway in Faulkner County. The consideration recited is $10.00, and, following the description of the property in the deed, there is a clause as follows:

"(Bryant Henry Anders is the son of one Clarice D. Arnold by a former Marriage, and he hereby Deed all his Undivided Interest herein to his Step-Father George A. Arnold. The original Deed was recorded in Book 167 at page 200 on August 21, 1963.)"

Arnold testified that he paid Anders $2,000.00 for this deed. Anders testified that he was paid nothing for the deed, and that he was just giving Arnold his (Anders') interest in the property. "He was very upset about not having the Conway property, and I certainly didn't want it." Admittedly, some time later, according to Anders, "in December or early January," Arnold did give Anders $2,000.00, but appellee stated that this represented half of the value of government bonds that had been cashed. "He said that was my part of the bond money." On February 5, Arnold executed a deed to Anders conveying the Park Hill property, and, on the same

date, Anders (still as a single man) executed a quitclaim deed to the 23rd Street property to Arnold. This deed was never recorded, and subsequently, on March 6, 1964, Anders gave C. F. Henderson an option to purchase this property. The option recites that Henderson has paid $2,333.33, and agrees to pay two more installments in the same amount, the first installment being payable within sixty days. The last paragraph of the option contains language as follows:

"***Bryant H. Anders agrees to furnish C. F. Henderson with a marketable title and abstract brought up-to-date free from any liens and encumbrances. In the event Bryant H. Anders is unable, for any reason, to do this, full restitution will be made to C. F. Henderson for any amounts he has paid on this contract."

In the meantime, on February 28, Arnold had instituted suit against Anders, asserting that he had been induced to convey the Park Hill property to appellee by virtue of fraudulent misrepresentations; that Anders had promised to repair and make improvements on the real estate in Faulkner County, which Arnold had purchased from Anders for $2,000.00; that Anders held no right, or interest, whatever, in the Faulkner County property, and appellant prayed that his deed to the Park Hill property be cancelled and that he also be given judgment for the $2,000.00 paid to Anders for the Faulkner County property. It was asserted that appellee took advantage of appellant's poor physical condition, lack of business experience, and the close family relationship. After an answer had been filed, denying the allegation of fraud, the case proceeded to trial. After hearing the evidence, the court entered its decree, finding that Arnold executed the deed to the Park Hill property "free from undue influence or misrepresentation," and that this deed was given in consideration of the execution of the deed from Anders to Arnold conveying the 23rd Street property. The court, however, found that Anders wrongfully obtained from Arnold the sum of $2,000.00

"by executing a deed to plaintiff to property in Faulkner County, Arkansas, to which defendant has no title, and that by reason thereof, the plaintiff should have judgment herein against the defendant for said sum of $2,-000.00," and Arnold was given a lien on the Park Hill property to enforce the $2,000.00 judgment. Anders, who was actually married, was also directed to convey the 23rd Street property free and clear of the dower and homestead rights of his wife. From this decree, appellant brings this appeal. For reversal it is asserted that the transactions were the result of fraud perpetrated by appellee, who took advantage of the implicit trust placed in him by appellant.

Pertinent testimony developed the following facts:

Bryant Anders held no interest whatsoever in the lake property in Faulkner County. This property, under the residuary clause, had been devised to grandchildren of Mrs. Arnold. Appellant had been under the impression that the lake property had been held jointly by him with his wife, but an examination of courthouse records revealed this to be untrue. The evidence is clear that Arnold was more interested in this property than any other, and desired to live on the lake. Anders, 41 years of age, stated that, at the time he executed the deed (to Faulkner County property), he was not aware of the fact that he held no interest, and had told Arnold, "If any part of it is mine, I will sign it over to you." However, Anders did not convey his possible interest by a quitclaim deed, but instead, executed a warranty deed to the property, though he testified he knew the difference between a warranty and quitclaim deed. Admittedly married, he executed the instrument as a single man. Arnold stated that he paid $2,000.00 to Anders for this deed. Appellee denied this, but did admit that Arnold had "given" him $2,000.00 within a few weeks of the transaction.

The evidence reflects that the two men were very close, and Arnold placed implicit trust in appellee. Ap-

pellant testified that their relationship was very close, and that Anders constantly called him "Papa Dear."

As previously stated, the two lived together until shortly before this litigation, and Anders assisted appellant with his duties as executor of the estate. They made some trips together searching for property which had belonged to the deceased. At Searcy, Mrs. Arnold had owned some rent property, the income being $40.00 per month. According to Joel C. Cole, who succeeded Arnold as administrator, about March 20, 1964,[1] the records reflected that Anders had collected the money from this rental property for a four months period, having directed that it be deposited to his personal credit in the American National Bank (of North Little Rock). Cole testified that, after he took over as administrator, he (Cole) arranged for the money to be paid to the estate. Anders admitted that the money had been deposited to his account, but stated that Arnold was with him when this was arranged, and appellant had said, "That was perfectly all right." At the Bank of Searcy, according to Arnold, the parties located between $250.00 and $300.00. Arnold testified that he (Arnold) said, "Well, we will leave it in here and he said, 'No, let's draw it out,' and so we drew it out and I said 'What will we do with it?' He said, 'I will take it down to Little Rock and put it in a separate account and we will use that to pay on the funeral bill.' So I drew it out and he took the money out of the window and we came back to Little Rock and he was going to put it in a separate account in a bank in Little Rock and I suppose he did." Anders testified that Arnold got $100.00 of this amount, and he (Anders) used the balance "to live on."

Anders also testified that his relationship with his stepfather was very close, and, when asked if Arnold had

[1]Arnold resigned as administrator because, as he stated, "I decided it was too much. There was some bonds that still couldn't be accounted for and it just got too complicated for me to find out where the bonds was and Mrs. Ham [attorney] decided we needed somebody to look after that and take it over."

trusted him implicitly, made no answer. Mrs. Corinne Rogers, connected with the Wallace Realty Company, who testified on behalf of Anders, stated that Arnold had told her in the very beginning that Anders was looking after everything for him. This confidence in appellee is well demonstrated by the fact that Arnold gave to Anders his power of attorney.[2]

Appellee testified that the exchange of conveyances was simply an even swap, without any other consideration. The Park Hill property (deeded by Arnold to Anders) was appraised by the F.H.A. at $14,750.00, and Ned Dumas, a real estate agent, appraised it at $11,500.00. The 23rd Street property (deeded by Anders to Arnold) was appraised by Dumas at $7,500.00. Irrespective of which appraisal is correct on the Park Hill property, it is obvious that there was quite a bit of difference in its value and that of the 23rd Street property. Arnold testified that Anders was to spend several thousand dollars fixing up the lake property in Faulkner County, and this was a part of the consideration for his exchanging the Park Hill property for that on 23rd Street. Anders denied this statement, but did testify that Arnold asked him about fixing up the lake property; that he (Anders) did not know what Arnold meant by "fixing it up," but that he did tell appellant that he would be delighted to do anything he could to help.

It is disputed whether Arnold ever had possession of the deed to the 23rd Street property. Arnold testified that he never did see the deed. Anders testified that "both" deeds[3] had been in the possession of Arnold, and had remained in the latter's desk drawer for a week after the transaction; that Arnold decided that he did

[2]The two also entered business together, further evidencing their close relationship, but the venture was not successful.

[3]It is not entirely clear from the record whether Anders was referring to the 23rd Street property deed and the Park Hill property deed, or to the 23rd Street property deed and the Faulkner County property deed, though the record indicates the Park Hill property deed, and too, the Faulkner County deed had been executed two months earlier.

not want to go through with the transaction, and brought the 23rd Street property deed into the living room and placed it on the coffee table. This last testimony was verified by Webster Pickard, uncle of Anders, who stated that he was present at the time. This evidence (that Arnold had been in possession of "both" deeds for a week, if Anders was referring to the Park Hill property) is somewhat puzzling, since the deed to Anders of the Park Hill property was recorded on February 6, *one day after execution*. The deed to Arnold from Anders, conveying the 23rd Street property was never recorded. Mrs. Rogers, heretofore referred to, testified that when the deeds were prepared in the real estate office, a fellow employee remarked, "Be sure and record these," and that Anders replied that he would. According to her recollection, Arnold was not given the deed that he was to receive. It is interesting to note, though of no great consequence, that Anders only executed a quitclaim deed to the 23rd Street property. Here, again, he executed it as a single man. We next find Anders giving an option to Henderson[4] for the purchase of the 23rd Street property (March 6, 1964).

The court found that Anders "wrongfully obtained" the $2,000.00 from Arnold, which means that the court found that Arnold paid this consideration for the Faulkner County property, but we think the Chancellor should have gone further, and cancelled the Park Hill property conveyance. We agree with the trial court that the testimony is not sufficient to establish Arnold as mentally incompetent, but we think the evidence of the close relationship between Arnold and Anders was sufficient to bring this case within the rule stated in *Norton* v. *Norton*, 227 Ark. 799, 302 S. W. 2d 78. One thing is certain. Appellee was the person who clearly benefited from all transactions. In his deed to the lake property, he conveyed nothing—for he had nothing to convey. He

---

[4]At the time of this trial, Henderson had a suit pending to recover $1,166.00 from Anders, which had been paid on the option to purchase the 23rd Street property, and which had not been returned.

received $2,000.00 for this conveyance, as found by the court. In the Park Hill—23rd Street transaction, he obtained a piece of property, which, under the evidence, was worth, at the least, several thousand dollars more than the property which he in turn conveyed. Even then, the conveyance that he executed was inadequate in that it did not release dower rights of his wife. In *Norton* we held that the facts were such as to place the burden of proof on the person who received the benefits to establish that deeds were freely and voluntarily executed by the person who sought to set them aside. From the opinion:

"* * *In *Gillespie* v. *Holland* 40 Ark. 28, 48 Am. Rep. 1, cited by appellees, the court announces the doctrine from which there has been no deviation, as follows: 'It has been the well-established doctrine in equity that contracts, * * * will be scrutinized with the most jealous care when made between parties who occupy such confidential relation as to make it the duty of the person benefited by the contract or bounty, to guard and protect the interests of the other and give such advice as would promote those interests. And this is not confined to cases where there is a legal control . . . They are supposed to arise wherever there is a relation of dependence or confidence, especially that most unquestioning of all confidences which springs from affection on one side and a trust in a reciprocal affection on the other. The cases for the application of the doctrine can not be scheduled. They pervade all social and domestic life. The application may sometimes be harsh, and one might well wish that an exception could be made, but there is a higher policy which demands that it should be universal. The language of Lord Kingsdowne, in *Smith* v. *Kay*, 7 H. of Lords Cases 750, has been considered striking. He says that relief in equity will always be afforded against transactions in which 'influence has been acquired and abused, in which confidence has been reposed and betrayed.' ' "

It is true that *Norton* involved a mother and son, which is not the case here. However, the evidence does make clear that Arnold had the utmost confidence and trust in his stepson, and that appellee was the dominant party in carrying out the transactions. This trust and confidence, coupled with appellant's age and evident ignorance of legal matters, brings the case within the holding heretofore cited, and entitles appellant to the relief sought.

Under the views herein expressed, Lot 3, Block 53, Park Hill Addition to the City of North Little Rock, Arkansas, should be restored to appellant, and the deed to this property from Arnold to Anders, should be cancelled, set aside and held for naught; Lot 12, Block 4, Wildberger's Addition to the City of North Little Rock, Arkansas, should be restored to appellee, and the deed from Anders to Arnold should be cancelled, set aside, and held for naught. The judgment for $2,000.00 in favor of Arnold against Anders is affirmed, and the cause is remanded, with directions to enter a decree not inconsistent with this opinion.