Evelyn K. MARSHALL *v.* John W. MARSHALL

CA 80-271                                              607 S.W. 2d 90
Court of Appeals of Arkansas
Opinion delivered November 12, 1980

*Carl J. Madsen*, for appellant.

*Macom, Moorhead, Green & Henry*, for appellee.

JAMES H. PILKINTON, Judge. On June 4, 1977, Evelyn K. Marshall of Arkansas County, Arkansas, married John W. Marshall, an elderly man from Oklahoma. His previous wife had died. Evelyn lived with appellee until on or about March 15, 1979. The wife sued the husband for divorce, and Mr. Marshall answered and counterclaimed also seeking a divorce. He alleged in addition that Mrs. Marshall wrongfully and by undue influence gained possession of the sum of $28,000, and other personal items, which were his separate property. The wife denied all of the allegations of the cross-complaint.

Mr. Marshall was 78 at the time of the trial. After a full and patient hearing, the chancellor dismissed the wife's complaint for want of equity, and awarded the husband a divorce on the cross-action. There is no appeal from that part of the decree. The trial court also found that Evelyn had exercised undue influence upon the husband to obtain $13,500 from him which represented a portion of the proceeds from the sale of certain real property which the husband had acquired prior to the marriage. The wife has appealed from that part of the decree rendering judgment against her for the $13,500. She contends that Mr. Marshall voluntarily gave this money to her.

I

Appellant first argues that the chancellor abused his discretion in finding that she used undue influence in obtaining the $13,500. The real test on appeal, however, is whether the decision of the chancery court that Mr. Marshall did *not* voluntarily give this money to her was clearly against the preponderance of the evidence. See Rule 52, Arkansas Rules of Civil Procedure.

The parties were husband and wife, and appellant does not dispute the existence of a confidential relationship in which she was dominant. Therefore, under the circumstances here, the transfer of the $13,500 to Mrs. Marshall was presumed to be invalid. *Dunn* v. *Dunn*, 255 Ark. 764, 503 S.W. 2d 168 (1973). Appellant therefore carried the burden to support by proof her contention that the transfer of the $13,500 to her was a gift, voluntarily made, and was not the product of a confidence betrayed or influence abused. The chancellor found that she had failed to discharge this burden of proof, and we cannot say on appeal that this decision was clearly erroneous (clearly against a preponderance of the evidence). Rule 52, A.R.C.P.

Prior to the marriage, Mr. Marshall had only known Evelyn for about ten days. The testimony clearly shows that Mr. Marshall had a major stroke in October of 1977, soon after the parties were married. He had previously suffered blackouts in May and August of 1977. The stroke in October

of 1977 was severe, and Mr. Marshall had difficulty talking, could not walk, and was incoherent; and, as he termed it, "did not know what he was doing half the time." This testimony was substantiated by Mrs. Marshall. She testified that her husband had suffered smaller strokes about every three months during the entire marriage. She further testified that these strokes would affect Mr. Marshall to the extent of disabling him for a while, and that he would not be able to walk or talk. Mrs. Marshall said that she took care of appellee during these periods of incapacity as he would not see a doctor. In November of 1977, soon after his major stroke, Mr. Marshall gave his wife a power of attorney over his affairs. There is no doubt from this record that the testimony regarding Mr. Marshall's mental and physical condition, much of which was undisputed by appellant, clearly shows that because of his condition Mr. Marshall was extremely dependent upon his wife. This was especially true in financial affairs. Mrs. Marshall testified that she wrote all the checks on the parties' joint account for the payment of the expenses of remodeling her home, which was done with Mr. Marshall's money, because appellee's mind got so bad after the stroke that he did not know enough to pay the bills. Mrs. Marshall claimed that she was writing most of the other checks on the parties' joint account for the reason that after his major stroke Mr. Marshall did not know what he was doing. During this period Mrs. Marshall made a $3,000 down payment from the parties' joint bank account on a new automobile which she purchased in January of 1978. She placed the title to the car in her name alone. The record is clear that it was Mrs. Marshall who principally controlled the financial affairs of the parties during the marriage, although Mr. Marshall supplied most of the money, and that the operation of their financial affairs by the wife was, at times, detrimental to the interest of the appellee. At the time of the marriage, Mr. Marshall owned as a separate estate a parcel of land in Oklahoma. This particular property had been owned and resided on by Mr. Marshall and his first wife before her death. The chancellor held Act 705 of 1979 (Ark. Stat. Ann. § 34-1214) applicable and that neither the property nor the proceeds therefrom were marital property, thus appellant had no interest therein. The home in Oklahoma was sold by appellee and the first payment received on the

purchase price was a check for $3,000. Appellant received this $3,000 check, and Mr. Marshall testified he never saw it. Mr. Marshall next received a check in the amount of $23,-185.12 on the sale of the property which he deposited in a bank at Enid, Oklahoma, in his and his daughter's names. Mr. Marshall testified that he deposited this money in Enid, Oklahoma, because he did not consider the proceeds of this sale to be the property of appellant and did not wish to give appellant any of this money because the property belonged to him and his first wife and he wanted the money to go to his children. Mrs. Evelyn K. Marshall did not know for a time that appellee had received the $23,185.12. Appellant testified that she found out about the $23,185.12 check when she discovered a letter from the realtor along with another check for $4,398.50 which represented the final payment on the sale price. When she discovered that the $23,185.12 had been disbursed, and deposited in the bank account in Oklahoma, appellant testified that she got upset and confronted appellee with this information. She took appellee's pants to a neighbor's house at 1:00 a.m. and admitted that the main reason for that action on her part was so that Mr. Marshall could not leave the house. The upshot of the matter was that appellant forced appellee to go to Enid, Oklahoma, and threatened to put him in a rest home if Mr. Marshall did not draw the money out, move the funds to Arkansas, and give her half of the combined total of the $23,185.12 and $4,-398.50 checks, one-half of which amounted to approximately $13,500. Mr. Marshall finally capitulated to her demands, and gave her a check for $13,500. The chancellor felt it was his duty to closely scrutinize this alleged gift under these circumstances, and to hold invalid the transfer of the $13,500 in question to Mrs. Marshall. We cannot say that this decision is clearly erroneous (clearly against the preponderance of the evidence). Rule 52, Arkansas Rules of Civil Procedure.

## II

Appellant places much emphasis on the fact that the appellee, almost at the conclusion of the trial, and in apparent exasperation, said that she could have the $13,500, and all the personal property in issue. The trial court attached no significance to this contradiction in the appellee's

testimony, and apparently treated it as an emotional outburst of an elderly man, under great strain at the trial. It is apparent from the record that the chancellor viewed this statement as only serving to point up the confusion which appellee was experiencing, and the extent to which he was subject to influence and coercion. The entire thrust of the cross-action was to the effect that appellee did not want or intend for appellant to have any part of the sale proceeds from his former home in Oklahoma. He had earlier testified positively that he did not want appellant to share in any part of the sale proceeds in question because that property had belonged to his first wife. We cannot say that the chancellor erred in his interpretation of Mr. Marshall's testimony, or that the trial court did not have the right to adjudicate the case on its merits, irrespective of the confused statement made by appellee just before the conclusion of the trial.

Finding no error, the decree of the chancery court is affirmed.