Patricia CHRESTMAN *v.* R. L. CHRESTMAN

CA 81-228                                             630 S.W. 2d 60

Court of Appeals of Arkansas
Opinion delivered March 24, 1982

*David Solomon,* for appellant.

*Charles B. Roscopf, P.A.,* for appellee.

JAMES R. COOPER, Judge. This case involves a petition for divorce filed in March of 1976. The chancellor, in a memorandum opinion dated April 24, 1978, determined that the various transfers of property to the appellant were the result of a scheme to deprive the husband of his assets. The court granted a divorce on December 17, 1979, and held the matter of property division in abeyance. A final decree, entered December 29, 1980, divided the property in basically the same manner proposed by the memorandum opinion of April 24, 1978. From the decision of the chancellor dividing the property, the appellant appeals, urging four grounds for reversal.

## APPLICABILITY OF ACT 705 OF 1979

The appellant argues that Act 705 of 1979 (Ark. Stat. Ann. § 34-1214 (Supp. 1981)), has no application in this case since it was not in effect as of the date of the effective division of the property. The appellant's argument is based on the premise that the chancellor actually divided the property by virtue of his memorandum opinion of April 24, 1978, rather than the final decree entered December 29, 1980.

Act 705 of 1979 became effective ninety days after the legislature recessed on April 20, 1979. The decree of divorce was granted December 17, 1979. Therefore, Act 705 of 1979 was in effect at the time the divorce decree was granted and also at the time the property was divided. See, *Ford* v. *Ford,* 272 Ark. 506, 616 S.W. 2d 3 (1981); *Noble* v. *Noble,* 270 Ark. 602, 605 S.W. 2d 453 (1980).

## THE BRAMLETT PROPERTY

The controversy over this particular 41.9 acre tract of land arose when, according to the chancellor, appellant notified appellee's mother asking that appellee's mother convey the Bramlett property to provide security for a loan to prevent foreclosure on the parties' residence. Originally, the Bramlett property had been owned by Chrestman Nursing Home, Inc., but it was conveyed on May 16, 1972, to

appellee's parents for consideration in excess of $30,000.00. The chancellor found that there was no evidence of any threatened foreclosure on the parties' residence. Appellee's mother agreed to convey the property back to the parties, but appellant instructed her to convey the property to one of the corporations over which appellant had gained control. Appellee's mother refused to execute that deed but conveyed title to appellee individually. Appellee later executed a deed which created an estate by the entirety in that property, as was the case with certain other properties. The chancellor found that this conveyance should be set aside, as should the other transactions whereby appellant gained control over the total assets of appellee.

Appellant argues that if Act 705 of 1979 is applicable, then the Bramlett property is marital property and she should share in the division of this property. The chancellor set aside the conveyance by appellee which created an estate by the entirety in the Bramlett property. With the setting aside of the above conveyance, the property reverted to ownership by appellee individually. Act 705 of 1979 exempts from "marital property" all property acquired by gift or devise by either spouse. Ark. Stat. Ann. § 34-1214 (B) (1) (Supp. 1981). Thus, the trial court could properly determine that the Bramlett property was not "marital property" and that the appellant should not share in it.

## THE TRANSFER OF STOCK IN THE TWO CORPORATIONS

When the parties were married, appellee was the sole stockholder of Chrestman Nursing Homes, Inc. and Phillips Enterprises, Inc. After the marriage, appellant acquired all the stock of both corporations. It was a matter of some controversy as to the actual time that these transfers took place, but the chancellor found that the transfers should be set aside. Appellant argues that the transfer to the wife was in fraud of creditors and therefore appellee should not be allowed to petition the court to set aside the transfer.

The exact purpose for the transfer is not clear, although the appellant is correct in indicating that it is possible those

transfers were for the purpose of defrauding creditors. However, the chancellor heard the witnesses and determined that the underlying reason for the transfer was appellant's scheme to gain control of appellee's assets, rather than a scheme to defraud creditors. We find that such a holding is not clearly erroneous nor against a preponderance of the evidence and therefore we find no merit in this point.

## THE PREPONDERANCE OF THE EVIDENCE

The appellant argues that the finding of the chancellor that the appellant practiced fraud and deceit from the inception of the marriage, or shortly thereafter, is clearly erroneous. We disagree. This case involved numerous hearings and opportunities for the chancellor to observe the demeanor of the witnesses and to determine the truth of the matter. The findings of the chancellor in his memorandum opinion clearly indicate that the chancellor carefully weighed the credibility of the witnesses. He found that during the first eighteen months of the marriage between the parties, the wife acquired virtually every income producing asset owned by the appellee prior to the marriage. The court pointed out that appellee testified that he had first resisted her efforts to obtain control of these assets but later acquiesced; that every transfer was obtained at her insistence through documents prepared by her attorneys on her instructions; and that those documents were brought to him for execution late in the evening when he was intoxicated. The court further found as follows:

> The evidence preponderates heavily in favor of the finding that all her interest in his property was obtained in the manner and under the conditions testified to by the doctor. They were obtained in violation and betrayal of her confidential relationship as his wife at times when he was known to her to be incapable of exercising sound judgment. The Court will further find that the wife entered into this marriage motivated by his apparent wealth and position and with the design then, or shortly thereafter formed, to despoil him of his assets and that this purpose was accomplished by that betrayal of her relationship and

abuse of her position of advantage over his impaired judgment.

In reaching these conclusions the Court has given careful consideration to the manner and demeanor of the parties while on the stand, of the evidence tending to corroborate or discredit such testimony, and the reasonableness and worthiness of belief thereof.

The Court found Dr. Chrestman to be most candid and unequivocal in his answers, whether or not favorable to his position. The wife, on the other hand, was found to be much less than candid, quite evasive on critical points and often contradictory.

A preponderance of the credible evidence appears to fully corroborate Dr. Chrestman as to time, places and circumstances under which the documents were executed and of his physical and mental condition at the time thereof. It fully corroborates his evidence that each transfer was at her insistence and suggestion and that all such instruments were prepared by others on her instructions, picked up by her and presented to him elsewhere for execution. All witnesses agreed that she could influence him and that he seemed to do whatever she asked or demanded of him. (T. 61)

Once the appellee showed that a confidential relationship existed between appellant and himself, and that the appellant was the dominant party in that relationship, then it is presumed that the transfer of property from the appellee to the appellant was invalid due to coercion and undue influence. Therefore, the appellant had the burden of rebutting that presumption by producing evidence to show that the transfers were freely and voluntarily executed. *Dunn v. Dunn*, 255 Ark. 764, 503 S.W. 2d 168 (1973); *Marshall* v. *Marshall*, 271 Ark. 116, 607 S.W. 2d 90 (Ark. App. 1980).

After reviewing the record, and the excellent briefs prepared by both counsel, we believe that the chancellor's decision must be affirmed. In chancery cases, we review the record *de novo*, but we will not reverse the chancellor unless

his findings are clearly erroneous or against the preponderance of the evidence, after giving due regard to his opportunity to judge the credibility of the witnesses. Ark. Rules of Civ. Proc. Rule 52 (a); *Andres* v. *Andres*, 1 Ark. App. 75, 613 S.W. 2d 404 (1981); *Hackworth* v. *First National Bank of Crossett*, 265 Ark. 668, 580 S.W. 2d 465 (1979). We cannot say that the chancellor's findings were against the preponderance of the evidence or that they were clearly erroneous.

The evidence supports a finding that appellant entered into the marriage with a deliberate intention to defraud the appellee of all his assets. The appellant would have been completely successful in her scheme, had she not been prevented by this lawsuit. The decision of the chancellor is affirmed.

Affirmed.

CRACRAFT, J., not participating.