Kathryn Ann MYRICK *v*. Richard Dale MYRICK

99-247                                        2 S.W.3d 60

Supreme Court of Arkansas
Opinion delivered October 21, 1999
[ Petition for rehearing denied December 2, 1999.* ]

---

* BROWN and IMBER, JJ., would grant.

D. *Scott Hickam*, for appellant.

*Hobbs, Garnett, Naramore & Strause, P.A.*, by: *Ronald G. Naramore*, for appellee.

W.H. "DUB" ARNOLD, Chief Justice. This case is before us on petition for review from the Arkansas Court of Appeals. The appeal is brought from a divorce decree entered by the Garland County Chancery Court. The primary issue is whether the chancellor incorrectly divided certain assets between appellant and appellee. Other issues are raised concerning the chancellor's award of alimony and his failure to rule on appellant's request for attorney's fees and a portion of appellee's pension.

The Court of Appeals found no error and affirmed the trial court in an unpublished opinion, delivered on February 10, 1999. It is well settled that upon a petition for review, we consider the case as though it were originally filed in this Court. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999); *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998); *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998).

Appellant and appellee were married in 1982 when appellant was seventeen years old and appellee was twenty-one. At the time of the marriage, appellant's mother, Martha Pearson, was the custodian of appellant's trust fund. The fund consisted primarily of stock from an old family business and monetary contributions made over the years by Mrs. Pearson. Shortly after the marriage, appellant asked her mother to turn the trust fund over to her. Mrs. Pearson reluctantly complied. Although the details are not clear, it appears the fund was converted to an account at the A.G. Edwards office in Gulfport, Mississippi, where Mrs. Pearson resided. The value of the account was approximately $330,000.

After the trust fund was converted, it was transferred to the A.G. Edwards office in Hot Springs, where appellant and appellee resided. From the date the account arrived in Hot Springs, if not before, it bore the names of appellant and appellee, jointly.

In August of 1984, Mrs. Pearson decided to purchase a home in Gulfport. She obtained the money to do so by selling approximately twenty-four acres of lake-front property in Hot Springs to appellant and appellee, jointly, for $150,000. Appellant and appellee used $150,000 from the A.G. Edwards account to make the purchase. They put the money into their joint checking account, then wrote a check to Mrs. Pearson. A warranty deed was duly executed conveying the property to appellant and appellee as husband and wife.

After buying the lake-front acreage, appellant and appellee lived in a home on the property. Later, they constructed a new home using $100,000 to $125,000 from the A.G. Edwards account. The old home was converted to three apartments, which were rented out. In 1995, the parties constructed a four-unit apartment complex on the land. To finance the construction, they took a mortgage on their new home. Later, they consolidated other debts into that mortgage, bringing its total to approximately $140,000.

On March 6, 1996, appellant filed a complaint for divorce. She asked the court to make an equal division of the parties' real and personal property in light of the inheritance and gifts given to her by her family. By amended complaint dated October 14, 1996, appellant alleged that appellee had taken control of her estate

through coercion, fraud, duress, and undue influence. Several months later, appellee filed a counterclaim for divorce.

Trial was held in the case on July 9 and 10 and October 15 and 16, 1997. After hearing the testimony of witnesses, viewing the documentary evidence, and receiving letter briefs from the parties, the chancellor awarded appellant a divorce. He found that the lake-front acreage was marital property; he dissolved the tenancy by the entirety to a tenancy in common, pursuant to Ark. Code Ann. § 9-12-317 (Repl. 1998), and ordered the property sold, with the net proceeds to be divided equally between the parties. However, he provided that appellant could retain use of the marital residence until the youngest of her four children either turned eighteen or graduated from high school, whichever occurs later.

The chancellor also found that the funds remaining in the A.G. Edwards account, approximately $87,000, were marital property to be divided equally. Finally, the chancellor ordered appellee to pay appellant temporary rehabilitative alimony in the form of tuition, books, fees, and expenses at an accredited college, voca-tional-technical school, or trade school until appellant completes a course of study or for five years, whichever is less. Despite the fact that evidence was presented at trial concerning appellee's pension and the amount appellant spent on attorney's fees, the chancellor made no ruling on these matters. Appellant now brings the instant appeal.

On appeal, appellant asserts the following:

1) The lower court erred by failing to rule upon a division of the appellee's pension plan and the appellant's request for an award of attorney's fees;

2) The lower court erred by failing to award the appellant certain property as her separate estate or by making an unequal division;

3) The lower court erred by the manner and nature of its tempo-rary rehabilitative alimony award.

*I. Whether the lower court erred by failing to rule upon a division of the appellee's pension plan and the appellant's request for an award of attorney's fees.*

The appellant requested a division of property rights in her complaint for divorce, which included a division of appellee's pension plan. Despite the fact that evidence was presented at trial concerning appellee's pension, the chancellor made no ruling on this matter. The appellee agrees that the court should have divided his pension as of the date of the divorce; he further does not quarrel with appellant's calculation of her portion of that benefit, which, when utilizing the summary of benefits formula and appellee's actual contracts, would equal one-half of appellee's monthly benefit of $149.49, or $74.75 per month to appellant. However, appellant's failure to obtain a ruling on this issue, as well as her request for an award of attorney's fees, precludes us from addressing these matters on appeal.

■ It is well settled that this Court will not address an argument where the abstract does not show that it was made in the trial court, *Webber v. Webber*, 331 Ark. 395, 400, 962 S.W.2d 345 (1998), *and* ruled upon there. *Sanders v. Bradley County Human Servs. Public Facility Bd.*, 330 Ark. 675, 683, 956 S.W.2d 187, 191 (1997); *see also Skokos v. Skokos*, 332 Ark. 520, 968 S.W.2d 26 (1998). Therefore, we hold that the issues upon which the trial court failed to make a ruling were not preserved for appellate review.

*II.   Whether the lower court erred by failing to award the appellant certain property as her separate estate or by making an unequal division.*

Appellant contends that although the A.G. Edwards account was a joint one in both parties' names, apparently from its inception, she is entitled to the account and the real property purchased with the money from the account as her separate nonmarital estate. Appellant makes this argument in spite of the fact that the account remained a joint account throughout the parties' marriage and was used by the parties to acquire certain real estate from appellant's mother in 1984, two years after appellant and appellee's marriage. Appellant contends that the placing of her inheritance in a joint account with appellee and buying the real estate in joint names were not voluntary acts, but ones occasioned by coercion and duress on the part of the appellee.

■ We have held that once one spouse has shown that a confidential relationship existed with the other, and that the other

was the dominant party in the relationship, it is presumed that a transfer of property from the former to the latter was invalid due to coercion and undue influence. In such a case, the spouse to whom the property was transferred bears the burden of rebutting the presumption by producing evidence showing that the transfers of property were freely and voluntarily executed. *Dunn v. Dunn*, 255 Ark. 764, 503 S.W.2d 168 (1973); *see also Lyons v. Lyons*, 13 Ark. App. 63, 679 S.W.2d 811 (1984); *Chrestman v. Chrestman*, 4 Ark. App. 281, 630 S.W.2d 60 (1982); *Marshall v. Marshall*, 271 Ark. 116, 607 S.W.2d 90 (Ark. App. 1980).

■ Appellant contends that, in light of the above-mentioned line of cases, as well as the fact that the trial court found appellee to be the dominant party in the relationship, the court then erred by leaving the burden of proving the *involuntariness* of the transfers with her, rather than requiring appellee, as the dominant party, to meet his burden of proving that the transfers were voluntary. Appellant's argument is misguided for two reasons. First, the trial court, in its December 4, 1997, letter opinion, stated that appellee "appeared dominant"; the court did not go so far as to make a finding in this regard.

Second, while *Dunn* and its progeny do seem to indicate that the presumption of invalidity is immediately invoked upon a mere showing of dominance on one party's part, when critically read, the requirement of proof of dominance is actually a bigger hurdle to overcome than the cases cited by appellant seem to indicate. *Burns, Guardian v. Lucich*, 6 Ark. App. 37 (1982), for example, better articulates the burden that appellant, as the purported donor, must overcome *before* the burden to prove voluntariness would shift to appellee, as the purported donee. *Burns* held that it is not the mere existence of a relationship of confidence which causes the gift to be deemed *prima facie* void, but only when the testimony further shows that the donee occupied *such a superior position of dominance or advantage as would imply a dominating influence* over his donor that this presumption arises. (Emphasis added.)

Indeed, in marriage, one party often asserts a dominant role. Logically, then, one party to the marriage occupying the dominant position must not be enough, in and of itself, to invoke the presumption that all transactions between the parties were the product

of undue influence or coercion on the part of the dominant party. To simply hold that a mere showing of dominance meets the burden to invoke that presumption is ludicrous and is not, and has not been, the law in Arkansas.

To state it more clearly, the invocation of the presumption of invalidity is really the product of a two-pronged test. Before the presumption of invalidity would ever be invoked, the transferring party must not only *claim* that the receiving party was the dominant one, but must also establish that that party occupied such a superior position of dominance or advantage as would *imply* a dominating influence sufficient to amount to duress, coercion, or undue influence; once this has been established, the presumption of involuntariness on the part of the transferring party is invoked, and the burden then shifts to the donee to prove that the transfers were voluntary. In other words, the simple existence of a dominant party in the relationship does not, in and of itself, invoke the presumption of invalidity; rather, the party claiming duress or coercion must establish further sufficient evidence to *invoke* the presumption, after which the burden to prove otherwise rests with the dominant party.

In this case, although the court found that appellee "appeared dominant," the appellant obviously failed to convince the chancellor that any duress or undue influence was exerted upon her by appellee, sufficient to establish that appellee enjoyed such a superior position of dominance or advantage over appellant as would imply a dominating influence in order to invoke the presumption of invalidity. We agree with the trial court that the first prong of adequately proving dominance was, therefore, never met by appellant in order to then shift the burden to appellee to prove voluntariness. There was some evidence that appellant was verbally abused by appellee, but there was no allegation or proof of incompetence on appellant's part.

Further, the cases relied upon by appellant for the proposition that a donee in a confidential relationship must show transfers to be voluntary are very different from the case at hand. For example in *Marshall v. Marshall, supra,* the donor was in poor health and mentally confused when the property was transferred. Coercion was clear and the marriage was a short one. In *Chrestman v. Chrestman, supra,* the donor was incapable of exercising sound judgment and

intoxicated when the transfer was made. It was clear that the donee wife entered the marriage with the intention of defrauding her husband of all his assets. Nothing in the case at bar rises to these levels.

More similarly, the Court of Appeals, in *Lyons v. Lyons, supra*, found no coercion where the husband, who had lost an eye as a result of a work-related accident and subsequently suffered depression, claimed his transfer of property to his wife to be involuntary because of his "condition." The court therein held that although there was evidence that appellant was depressed, there was no allegation or proof of incompetence on his part.

■ A very important part of the trial court's ruling was obviously based upon the credibility of the witnesses. We have held many times that although we review chancery cases *de novo* on the record, we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Slaton v. Slaton*, 336 Ark. 211, 983 S.W.2d 951 (1999). Further, in reviewing a chancery court's findings, we give due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996); *Riddick v. Street*, 313 Ark. 706, 858 S.W.2d 62 (1993); *see also Anderson v. Holliday*, 65 Ark. App. 165, 956 S.W.2d 173 (1999); *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997).

■ In the instant case, there was sharply conflicting testimony, for example, on matters concerning the behavior of the parties towards each other in reference to issues of fraud and coercion. Further, there was testimony from Andrea Williams Crawford, a witness close to both parties, that both parties tended to exaggerate. Perhaps the best evidence of the voluntary nature of the transfer of the A.G. Edwards account to the parties jointly is how the parties used it over the course of their marriage. Real estate was purchased with funds from this account; a new marital residence was constructed with it; and later the residence was mortgaged to build the apartments. After the divorce action was filed, all parties' debts (which, too, were joint) were paid off with a consolidation loan and a mortgage on the residence. The trial court simply found no duress, but rather found the joint nature of the parties transactions to be voluntary. We agree.

■ In addition to her argument regarding the presumption of invalidity of the transfer, appellant further contends that because appellee failed to call his attorney, Mr. Crawford, as a witness at trial, then the absent-witness rule applies, thereby establishing the presumption that the witness's testimony would be unfavorable to appellee. Mr. Crawford, according to the abstract, prepared at least one of the deeds to the lake-front property. We ·hold that his testimony would not have added anything of significance to the case, as neither appellant nor her mother testified to being forced or fraudulently induced into signing the deeds; in fact, they testified that they did not even read the deeds. Therefore, Mr. Crawford's failure to be called by appellee as a witness was inconsequential.

Appellant suggests that Mr. Crawford possessed special knowledge of matters in the suit because he prepared at least one of the deeds, and that he would have been able to testify that neither she nor her mother wished to have the property transferred to appellee jointly. She relies on this Court's holding in *Canal Ins. Co. v. Hall*, 259 Ark. 797 (1976), which states that where a party whose duty it is to call a witness who possesses special knowledge of matters involved in a suit fails to do so, there is a suggestion or presumption that the witness's testimony would be unfavorable.

Appellant's argument is not compelling. In fact, if appellant thought the witness had knowledge that would somehow tend to cast doubt on the real estate transactions, it would seem to be *her* duty to call him   not appellee's. Appellant's assertion that Mr. Crawford undeniably had "peculiar or special knowledge concerning facts essential to appellant's case" is tantamount to an admission of this very point.

In short, we find no error on the part of the trial court in its failure to award the appellant certain property as her separate estate; further, we find no error in Mr. Crawford's failure to be called by appellee as a witness.

### III. *Whether the lower court erred by the manner and nature of its temporary rehabilitative alimony award.*

The trial court's written opinion and decree provides as follows with respect to appellant's request for alimony:

> The court awards no permanent alimony to the plaintiff although taking into consideration the appropriate facts, the court does order by way of temporary rehabilitative alimony that the defendant will pay the tuition, books, and fees expense of the plaintiff at an accredited college, vocational-technical school or trade school, until the plaintiff completed a course of study or five (5) years, whichever is less.

The statutory language authorizing the court to make such an award is contained in Ark. Code Ann. § 9-12-312 (Repl. 1998), which provides in pertinent part:

> When a decree is entered, the court shall make such orders concerning the alimony of the wife or the husband and the care of the children, if there are any, *as are reasonable from the circumstances of the parties and the nature of the case.* . . .

(Emphasis added.) Appellant argues that the manner and nature of the court's temporary rehabilitative alimony award is simply not reasonable from the circumstances of the parties and the nature of the case because appellant is a thirty-two year old mother of four, with a full-time job, and no time to "go off to school." Appellant contends that any plausible feasibility of this would be more at the expense of the children than she or the appellee.

Appellant asserts that the evidence fully supports an award of alimony in some form or manner, and that the lower court has properly determined that the appellant was entitled to an award of alimony. Appellant requests, therefore, that this matter be remanded for the lower court to determine an award that is reasonable under the circumstances for the parties in a case of this nature.

■ Appellant's argument is not compelling. The chancellor had broad discretion to award whatever (if any) alimony he felt was appropriate under the facts and circumstances unique to this case. We have held that an award of alimony lies within the discretion of the chancellor and will not be reversed absent an abuse of that discretion. *Herman v. Herman*, 335 Ark. 36, 977 S.W.2d 209 (1998); *Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993).

Here, the court's alimony award, although not agreeable to the appellant, was perfectly reasonable, given the circumstances. Appellee is a school teacher, and appellant earns only slightly less income

than appellee. Additionally, appellee pays more support than the support chart would indicate, as he pays child support to appellant for four children, even though he has custody of one of the children. Appellant pays no support to appellee.

In short, due to the chancellor's broad discretion in this matter, we cannot say that he abused that discretion. Therefore, we hereby affirm the trial court on this and all issues presented by appellant.

Affirmed.

CORBIN, J., concurs.

BROWN and IMBER, JJ., dissent.

DONALD J. CORBIN, concurring. With a *de novo* review, I would affirm.

ANNABELLE CLINTON IMBER, Justice, dissenting. My only disagreement with the majority concerns its rejection of appellant's argument that the chancellor erred when he failed to require that appellee, as the dominant party, prove his acquisition of an interest in certain assets was the result of voluntary acts by appellant. Based upon our case law and the chancellor's findings in a letter opinion, I must conclude that appellant's argument has merit.

Our court has recognized that when one party in a confidential relationship is dominant and the other party in that relationship has made a transfer of assets to the dominant party, the transfer is presumed invalid, and the dominant party has the burden of proving that the transfer was freely and voluntarily made. *Dunn v. Dunn*, 255 Ark. 764, 503 S.W.2d 168 (1973); *Jamison v. Duncan*, 233 Ark. 780, 348 S.W.2d 709 (1961); *Norton v. Norton*, 227 Ark. 799, 302 S.W.2d 78 (1957); *Young v. Barde*, 194 Ark. 416, 108 S.W.2d 495 (1937); *Gillespie v. Holland*, 40 Ark. 28 (1882). We have also recognized that "no greater confidential relationship is known to the law than that which exists between a husband and wife." *Dunn, supra.*

Over the course of a four-day trial, the chancellor in this case heard the testimony of the witnesses and viewed the documentary evidence. The chancellor's findings were then set forth in a letter opinion dated December 4, 1997. With regard to whether or not

the appellee's interest in the assets was acquired through fraud, coercion, or undue influence, the chancellor made the following findings:

> The Court finds the evidence fails as to fraud, duress, or coercion. It is true in this relationship one of the parties appeared dominant and the other servile, but this alone does not prove fraud, coercion and duress. Greater weight could have been given Plaintiff's argument of fraud, coercion, and duress had the grantor [donor] not been a third party.

Notwithstanding the chancellor's finding that appellee was the dominant party in the relationship, the majority "agrees with the trial court that the first prong of adequately proving dominance was, therefore, never met by appellant in order to then shift the burden to appellee to prove voluntariness." In order to reach this conclusion, the majority first attempts to minimize the chancellor's finding by suggesting that no finding is in fact made by the statement that appellee "appeared dominant." The majority discounts the finding because the chancellor selected the verb "appear" to describe what came to "be clear to the mind: be obvious or evident..: reveal itself to an observer or reader: be manifest." *Webster's Third New International Dictionary* 103 (1993). The plain and ordinary meaning of the chancellor's finding belies the majority's insinuation that no finding was made at all.

Next, the majority recognizes that *Dunn, supra,* and its progeny indicate that the presumption of invalidity is immediately invoked upon a showing of dominance on one party's part. In spite of that recognition, the majority proceeds to create a two-pronged test for the invocation of the presumption of invalidity. Under this new test, the party claiming duress or coercion must prove more than is required by *Dunn, supra.* Not only must there be proof that the other party was the dominant party in a confidential relationship. The party claiming duress or coercion must also "establish *further sufficient evidence to invoke* the presumption, after which the burden to prove otherwise rests with the dominant party." (Emphasis added.) With regard to this latter requirement, it appears that the party claiming duress or coercion must establish by *further sufficient evidence* that duress or undue influence was exerted by the dominant party in order to invoke the presumption of coercion. In other words, there must be proof of coercion in order to invoke the

presumption of coercion. This two-pronged test created by the majority fails to honor the principle of law enunciated in *Dunn, supra*. Furthermore, to require proof of coercion in order to invoke a presumption of coercion makes absolutely no sense.

In his letter opinion, the chancellor found that appellee's position as the dominant party in the relationship did not prove fraud, coercion and duress. This finding that appellant had not *proven* fraud, coercion or duress should convince us that the chancellor erroneously failed to shift the burden of proof to appellee after finding that appellee was the dominant party in the relationship. Pursuant to our holding in *Dunn, supra*, appellee had the burden of proving that his acquisition of an interest in the trust fund and the lake property was the result of voluntary acts by appellant. The chancellor noted that greater weight could have been given to appellant's argument had the grantor or donor not been a third party. This may have been true with respect to the lake property deeded by appellant's mother to appellant and appellee, as husband and wife. However, as noted in the majority opinion, appellant asked her mother to turn the trust fund over to her shortly after the marriage. The details concerning the initial transfer in Gulfport, Mississippi, are not clear with regard to whether appellee received his interest in the trust fund from appellant or from a third party, appellant's mother. Under these circumstances, all transfers to appellee were not necessarily made by a third party. Appellee, as the dominant party in the marriage, would still have the burden of proving that any transfers by appellant were freely and voluntarily made.

In *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996), we held that the chancellor erroneously relieved the noncustodial parent of the legal burden to prove that a material change of circumstances and the best interest of the child warranted modification of the initial custody order. Similarly, in this case the chancellor erroneously failed to shift the burden of proof to appellee after finding appellee to be the dominant party in the relationship. This case should be reversed and remanded in order to allow the chancellor to review the evidence and determine whether appellee has met his burden of proving that the transfer of assets was voluntary.

For these reasons, I must respectfully dissent.

BROWN, J., joins in this dissent.