Harry KELLEY et ux *v.* Terry Lynn PIPKIN et al

CA 79-275 598 S.W. 2d 102

Court of Appeals of Arkansas
Opinion delivered April 16, 1980
Released for publication May 7, 1980

*Honey & Rodgers*, by: *Charles L. Honey*, for appellants.

*Woodward & Kinard, Ltd.*, by: *Mac Dodson*, for appellees.

JAMES H. PILKINTON, Judge. Henry Marvin Pipkin, died intestate on January 25, 1979, leaving three children as his sole and only hiers at law. One of his sons was appointed administrator of the estate.

On February 15, 1979, after administration was granted, Harry Kelley, a nephew, and Janet Kelly, his wife, filed this suit in equity against the estate and heirs. The complaint seeks specific performance of an oral contract, allegedly made in September, 1977, by which Mr. Pipkin had agreed to leave all of his property to the Kelleys in return for them taking care of him for the rest of his life. This appeal is from a decree finding that the Kelleys had failed to prove their case by clear, cogent and convincing evidence.

## I

Appellants first claim that the trial court erred by holding that they had failed to meet the burden of proof required to establish an oral contract to make a will.

Henry Marvin Pipkin and Louise Pipkin had been married thirty years when they were divorced. They were the parents of two sons, who are now adults, Terry Lynn Pipkin and Tony M. Pipkin. Mr. Pipkin also had a daughter by a prior marriage named Rachel Pipkin Winnbury. The daughter was married and had a home of her own, but the two sons were unmarried and lived with their mother in

Magnolia, Arkansas, after the parents were divorced. Following the divorce, the Pipkins placed their home for sale. They had previously divided their personal property to the satisfaction of each.

After the divorce, which occurred in early 1977, Mr. Pipkin first lived with his sister, Mrs. Hesterly Kelley. In September, 1977, he moved his house trailer to a space adjacent to the home of Harry Kelley and Janet Kelley, husband and wife, placing it on their land. Harry Kelley was a son of Mrs. Hesterly Kelley, and a nephew of Henry Marvin Pipkin. Harry Kelley testified that his uncle told him, "If you all will take care of me until my death, everything I own will be yours." Mrs. Janet Kelley gave similar testimony. She said Mr. Pipkin was ill when he came to the house, couldn't cook for himself, and she did the washing and cooking for him until his death. According to Mrs. Janet Kelley the actual living arrangements were for Mr. Pipkin to eat all of his meals with them. She was to tend to his clothes and see that Mr. Pipkin got any special foods he might need. She claimed that Mr. Pipkin slept at their house for awhile and until he got better physically. Then he spent the nights at his trailer. Both Mr. and Mrs. Harry Kelley say they furnished the electricity for Mr. Pipkin's trailer without charge as it was hooked to their house meter. Mrs. Janet Kelley claimed that she cleaned Mr. Pipkin's trailer when it needed it, at least once or twice a week. It is the position of appellants that they performed their part of the agreement, but Mr. Pipkin failed to make a will leaving everything to them as he said he would do.

The position of appellants is supported in some respects by the testimony of Mr. Kelley's mother; and by the testimony of other members of the Harry Kelley family, including his children and son-in-law. The only witness for appellants who was not a member of the immediate family of Mr. and Mrs. Harry Kelley was Mrs. Flossie Brigham, a friend. She testified that Mr. Pipkin told her that he was going to pay Harry and Janet to take care of him, and had said, "Well, the ones that help me, I am going to help them." The several witnesses for appellants claim to have heard Mr. Pipkin say that he meant to leave everything to Harry and Janet.

On the other hand, the testimony offered by appellees tends to show various statements and declarations made by Mr. Pipkin to the effect that he wanted everything to go to his children at his death. William Watson Pipkin, an older brother of Henry Marvin Pipkin, testified that Marvin told him both prior to and following the divorce that he wanted his children to have what was left after the hospital and doctor's bills were paid, but did not want his ex-wife to have anything. Mrs. Theola Pipkin, Marvin's sister-in-law, testified that Marvin didn't want Louise, the former wife, to have any of his property but wanted his boys and Rachel to have their share. She said that Marvin loved his children very much and quite frequently the children would call her when they couldn't contact their father to check on him. Other witnesses offered by appellees disputed the assertion by appellants that Mr. Pipkin wished to disinherit his three children.

Appellants argue that since appellees could offer no direct proof that Mr. Henry Marvin Pipkin did *not* make the agreement, as appellants claim, the appellants' version of the matter should have been accepted by the court as undisputed. They say the chancellor was obligated on this record to recognize the agreement claimed by them and enforce it. We cannot agree. In weighing testimony, courts may consider the interest of a witness in the matter in controversy. *Wasson* v. *Lightle,* 188 Ark. 440, 66 S.W. 2d 652 (1933). Facts established by the testimony of an interested witness, or one whose testimony might be biased, cannot be considered as undisputed or uncontradicted. *Old Republic Ins. Co.* v. *Alexander,* 245 Ark. 1029 at 1039, 436 S.W. 2d 829, *Sykes* v. *Carmack,* 211 Ark. 828, 202 S.W. 2d 761 (1947); *Skillern* v. *Baker,* 82 Ark. 86, 100 S.W. 2d 764.

The chancellor also had the right to consider circumstancial evidence as well as direct evidence. There are some circumstances shown by the record that support appellants' claim; however, there are other circumstances — some very strong — which tend to show that no such agreement was made. For example, the record is clear that Mr. Pipkin paid his own way in most respects. His bank records were introduced in evidence and are quite revealing. Mr.

Pipkin and his former wife sold their homeplace on January 12, 1978, after the divorce, and divided the proceeds. It is undisputed that Mr. Pipkin received $15,000 in cash from this transaction. He was receiving a monthly Social Security check of $280.10 and in the last year of his life he also received a royalty check of some kind from Ferguson Oil Company amounting to $231.00 a month. Mr. Pipkin had both a checking account and a savings account. Bank records show that he had $28.04 in his savings account on December 31, 1977. He deposited the $15,000 from his part of the sale of the homeplace on January 24, 1978, making a balance in savings of $15,028.04. An inspection of the records pertaining to his savings account indicates that he deposited an additional $500.00 on February 3, 1978, and that he had withdrawn a total of $10,307.89 prior to his death, leaving a balance in savings at the time of his death, of $5,220.15. An examination of the checking account from January 17, 1978, until his death, indicates that during such period of time Mr. Pipkin deposited $3,014.32 in his checking account. He wrote checks against this account to pay certain bills and expenses. His balance in checking at the time of his death was $251.18. The testimony indicates that Mr. Pipkin usually cashed and spent his Social Security check. The bank statements show that only one Social Security check was deposited. Appellants admit that Mr. Pipkin bought and paid for his clothing and medical expenses, and that they did not furnish him with any clothing or medical benefits. The proof also indicates that Mr. Pipkin at times bought groceries, and other items, and that he took some of his meals away from the Harry Kelley home. The decision of the chancellor was based necessarily on the credibility of the witnesses. As the courts have many times said, the chancellor is in a better position to judge credibility than we are on appeal. *Dennis* v. *Dennis,* 239 Ark. 384, 389 S.W. 2d 631 (1965).

Appellants correctly point out that Arkansas does recognize oral agreements to make a will as valid and enforceable contracts. *Crowell* v. *Parks,* 209 Ark. 803, 193 S.W. 2d 483 (1946). However, it is also well established that the evidence must be clear, cogent and convincing in order to establish such a contract. *Apple* v. *Cooper,* 263 Ark. 467, 565 S.W. 2d 436 (1978).

The chancellor decided that the appellants had not met that burden of proof. After a careful review of the evidence, we cannot say appellants proved by clear, cogent and convincing evidence that the alleged agreement was made. Therefore, we find no merit in appellants' point I.

## II

Appellants also argue that a color television set and an antique clock, which belonged to Mr. Pipkin, were given to Mrs. Janet Kelley by him prior to his death.

Inter vivos gifts must also be established by clear and convincing evidence. *Porterfield* v. *Porterfield,* 253 Ark. 1073, 491 S.W. 2d 48 (1973). The decision made by the chancellor concerning the alleged gifts was based primarily upon the credibility of those witnesses who gave testimony about this phase of the case. On the record before us we cannot say that the alleged gifts were proven by evidence that is clear and convincing.

## III

In discussing the above two points, appellants complain that the chancellor, in his decree, did not itemize the personal property claimed by the estate but simply ordered the Kelleys to deliver to the administrator all property in their possession belonging to Henry Marvin Pipkin at the time of his death. The pleadings on behalf of the estate clearly show what items were claimed. Appellants certainly know what items of personal property are involved. The chancery court has the power to try the title to this personal property if it has not already done so. If any particular item is still in dispute after the determination of this appeal, the court below can certainly deal with it. We therefore affirm this case in all respects, but remand so the trial court may promptly determine title to any personal property still in dispute.