Billie Jean McCUNE *v.* W. G. BROWN, Sr.

CA 82-298                                648 S.W.2d 811

Court of Appeals of Arkansas
Opinion delivered March 30, 1983
[Rehearing denied May 4, 1983.]

*Davidson, Horne, Hollingsworth, Arnold & Grobmyer, P.A.,* for appellant.

*Eichenbaum, Scott, Miller, Crockett, Darr & Hawk, P.A.,* by: *Frank S. Hamlin* and *Leonard L. Scott,* for appellee.

54

LAWSON CLONINGER, Judge. On August 28, 1981, appellee, W. G. Brown, Sr., filed a complaint in equity against the appellant, Billie Jean McCune, seeking a temporary restraining order to keep appellant from removing any of the contents of a safety deposit box leased to her at Worthen Bank & Trust Company in Little Rock, Arkansas. The contents of the box consisted of 650 gold Krugerrands, 13 Mexican pesos and one double eagle gold piece valued at approximately $250,000. The gold was placed in appellant's safety deposit box on December 12, 1978, at a time when appellee was involved in a divorce proceeding with his wife. Appellee admitted at trial that he had transferred the gold to appellant, his daughter, in an attempt to defeat his ex-wife's rights to the property.

The chancellor held that appellee had proved his right to possession of the gold and therefore was entitled to it pursuant to Ark. Stat. Ann. § 34-2101 et seq. (Repl. 1962 and Supp. 1981). The chancellor found that appellee had not made a completed gift of the gold and further held that appellee was not estopped from asserting his claim to the gold. From the decision of the chancellor, appellant now brings this appeal, alleging three points for reversal.

Appellant's first point for reversal is that the court erred in not finding that appellee was estopped from asserting any claim to the gold. As appellant points out, this case is very similar to a recent case decided by this court, *Melvin* v. *Melvin*, 270 Ark. 522, 606 S.W.2d 90 (Ark. App. 1980). In *Melvin*, the chancellor made a property division in a divorce proceeding whereby he awarded the husband a Winnebago motor home. On appeal the wife argued that the Winnebago was not marital property which the chancellor could divide because it was a gift to her before marriage. The chancellor had found that the transfer of title to the Winnebago to his present wife was solely an attempt to keep his former wife from receiving it in an earlier divorce proceeding. The chancellor further found that the general understanding at the time of the transfer was that it would be transferred back to the husband at some time subsequent to the divorce.

On appeal, the Arkansas Court of Appeals found that the evidence supported the court's finding that the husband intended no gift of the Winnebago to his present wife. However, the court further found that the husband was estopped from asserting any claim to the Winnebago. The court recognized that the transfer was made to preclude any possible claim by appellee's former wife. The court analogized this situation to one in which a husband conveys property to his wife in order to defraud his creditors. A conveyance made to defraud creditors is still good between the parties. *Maupin* v. *Gaines*, 125 Ark. 181, 188 S.W.2d 552 (1916). He does not come into court with clean hands. See *McClure* v. *McClure*, 220 Ark. 312, 247 S.W.2d 466 (1952).

We agree with appellant that the facts of this case are very similar to the facts in *Melvin, supra.* However, we find that the *Melvin* case is in conflict with previous cases decided by the Arkansas Supreme Court in the application of the clean hands maxim. In *Batesville Truck Line, Inc.* v. *Martin,* 219 Ark. 603, 243 S.W.2d 729 (1951), the Arkansas Supreme Court held that the clean hands doctrine must, in order to defeat a suit, have an immediate and necessary relation to the equity which the complainant seeks to enforce against the defendant. Further, the party complaining of the wrong must have been injured thereby to justify the application of the principle of unclean hands. The purpose of the maxim is to secure justice and equity, and not to aid one in an effort to acquire property to which he has no right.

In *Batesville Truck Line, Inc., supra,* a transit permit was granted by the Public Service Commission to a dummy corporation formed by appellee, Clay Martin, and appellant, Gilbert F. Tugwell. Martin's name was withheld from the P.S.C. proceedings because otherwise the permit would have been denied. Tugwell later refused to transfer to Martin any of the stock. Martin brought this lawsuit to require appellant to specifically perform a contract to transfer to Martin 50% of the corporate stock of Batesville Truck Line, Inc. The corporation and its stockholders, including Tugwell, were made parties defendant. The trial resulted in a decree in appellee's favor which directed Tugwell and his

wife to transfer the stock to Clay Martin. Tugwell's plea of "unclean hands" against Martin was denied for the reason that Tugwell participated in the fraud on the Commission. The Supreme Court agreed stating:

> To hold that a court of equity cannot examine the contract between the parties that is neither proscribed nor contrary to good morals because of the collateral wrong by both affecting a third party, would lead to the absurd consequence that a defendant in a suit would take a decree equivalent in its legal force to affirmative relief under the plea of corrupt participation. [Citation omitted.] To apply the maxim relied on to the facts in this case would defeat its purpose.

See also *Plain v. Ray,* 245 Ark. 310, 432 S.W.2d 13 (1968).

Recently, the Arkansas Supreme Court has taken the position that it will balance the equities between the parties in the application of the clean hands doctrine, and if the policy against permitting unjust enrichment of the transferee is outweighed by the policy against giving relief to a person who has entered into an illegal transaction then the property owner's conduct is not so reprehensible that he should lose the property. See *Bramlett v. Selman,* 268 Ark. 457, 597 S.W.2d 80 (1980); *Henry & Mullen v. Goodwin & Attaway,* 266 Ark. 95, 583 S.W.2d 29 (1979).

In the instant case, we find that there was evidence to support the chancellor's decision that appellee was not estopped from asserting his interest in the gold. We hold that this case is governed by the rule stated in *Batesville Truck Line, supra,* and to the extent that *Melvin v. Melvin, supra,* is in conflict, that case is overruled. In order to justify application of the clean hands maxim, appellant must prove that she was somehow injured thereby. Further, a chancellor may balance the equities between the parties in determining whether or not to apply the maxim. See *Bramlett v. Selman, supra.*

Here, the evidence strongly suggests that appellant knew why the gold was being transferred to her. Although

she testified that appellee had made an unconditional gift of the gold to her, the chancellor chose to believe appellee and his witnesses who testified that the gold was transferred to appellant for the purpose of keeping it from his former wife and appellant understood that the gold was to be transferred back to him some time after the divorce. The findings of a chancellor will not be disturbed on appeal unless they are found to be clearly erroneous or against a clear preponderance of the evidence; and, inasmuch as a preponderance of the evidence depends heavily on the credibility of the witnesses, the appellate court defers to the superior position of the chancellor in this regard. See *Hatfield* v. *Arkansas Western Gas Company*, 5 Ark. App. 26, 632 S.W.2d 238 (1982). We find no error in the chancellor's ruling on this issue.

Appellant's second point for reversal is that the trial court erred in not finding that appellee had made a final irrevocable gift of the gold to appellant. The requirements for an effective inter vivos gift are:

1. The donor knew and understood the effect of his act, and intended that effect;

2. The donor made actual delivery of the chattel to the donee or his agent;

3. The donor, by delivery, intended to pass title immediately;

4. The donee actually accepted the chattel as a gift.

See *Stratton* v. *Corder*, 236 Ark. 472, 366 S.W.2d 894 (1963). These elements must be proved by clear and convincing evidence. *Ragland* v. *Commercial National Bank*, 276 Ark. 418, 635 S.W.2d 258 (1982). The rule with respect to delivery of gifts is not so strictly applied to transactions between members of a family. See *Baker* v. *Applen*, 181 Ark. 454, 26 S.W.2d 109 (1930); *Festinger* v. *Kantor*, 272 Ark. 411, 616 S.W.2d 455 (1981). However, even between family members, there must be an actual delivery of the subject matter of the gift to the donee with a clear intent to make an immediate

unconditional and final gift beyond recall, accompanied by an unconditional release by the donor of all future dominion and control over the property so delivered. This must be proven by clear and convincing evidence. See *Boling* v. *Gibson,* 266 Ark. 310, 584 S.W.2d 14 (1979).

In the instant case, we hold that there was evidence upon which the chancellor could find that there was no delivery of the gift with the requisite donative intent and unconditional release of all future dominion and control over the property. First of all, appellee paid no gift tax on the gold which was transferred to appellant. Upon all the previous gifts which appellee had made to appellant, he had paid the gift tax. Secondly, appellee retained the keys to the safety deposit box which is some evidence of an intent not to give up an unconditional release of the gold. See *Boling* v. *Gibson, supra.* Thirdly, there were other items in the safety deposit box which clearly belonged to appellee, including his will. Finally, appellee's grandson testified that appellee had first transferred the gold to a safety deposit box in his grandson's name. The grandson testified that he intended to give the gold back to his grandfather some time after the divorce. This gold was later transferred to a safety deposit box in the name of appellant, and the reason stated by the grandson was because appellant was to move back and live with appellee. This would make the contents of the box more easily accessible to appellee. This testimony corroborates the testimony of appellee. Therefore, we hold that the chancellor's decision on this issue is not clearly against a preponderance of the evidence.

Appellant's third point for reversal is that the lower court never had jurisdiction of this case and erred by refusing to transfer the case to Pulaski County Circuit Court. Appellee had initially filed a complaint for a temporary restraining order. Appellant contends that appellee had an adequate remedy at law under the replevin statute. The replevin statute, pursuant to Ark. Stat. Ann. § 34-2122 (Supp. 1981), gives the petitioner the right to immediate possession of the property sought. The petitioner must post a bond.

We do not reach this issue, since we find that appellant did not timely file her motion to transfer. Appellant initially filed an answer and counterclaim to the complaint on September 1, 1981. The allegation that chancery court did not have jurisdiction was not raised in either pleading. On January 22, 1982, appellant filed a motion to dissolve the temporary restraining order and to transfer the case to circuit court on the basis that appellee had an adequate remedy at law under the replevin statute. This case was originally set for trial on January 22, 1982, and was later moved to the date of March 4, 1982. Approximately five months had transpired between the time of the original answer and the filing of the motion to transfer. Numerous interrogatories had been exchanged and depositions taken in preparation for trial.

In the case of *Whitten Developments, Inc.* v. *Agee,* 256 Ark. 968, 511 S.W.2d 466 (1974), the Arkansas Supreme Court held that by failure to make a timely motion to transfer a case from equity to law, a party waives the right to make the motion, unless the equity court is wholly incompetent to grant the relief sought. The basis for the transfer in *Whitten Developments, Inc., supra,* was, as here, based upon the purported adequacy of the remedy at law. The court recognized that equity court was not wholly competent to grant the relief sought, and therefore held that the motion to transfer was untimely.

Rule 12 (h) of the Arkansas Rules of Civil Procedure (Repl. 1979), does not change this rule. This rule states:

> Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action or direct that the case be transferred to the proper court.

As was stated in *Whitten Developments, Inc., supra,* an alleged lack of jurisdiction based wholly upon the purported adequacy of a remedy at law is not a jurisdictional question of the type over which equity court has no power to act whatsoever. Hence, the rule stated in *Whitten Develop-*

*ments, Inc.* is still valid, and therefore, appellant's motion to transfer was not timely filed.

The decision of the chancellor is accordingly affirmed.

CORBIN, CRACRAFT and GLAZE, JJ., concur.