Marlene PERRIN *v.* Royce PERRIN

CA 82-426                                     656 S.W.2d 245

Court of Appeals of Arkansas
Opinion delivered September 7, 1983

*Batchelor & Batchelor,* by: *Fines F. Batchelor, Jr.,* for appellant.

*Wiggins, Christian & Garner,* by: *Eddie N. Christian,* for appellee.

LAWSON CLONINGER, Judge. In this action for divorce and property division, the trial court granted appellee, Royce Perrin, a divorce from appellant, Marlene Perrin, on the grounds of personal indignities. The court also set aside conveyances of four acres of land and a stock certificate to appellant from appellee on the basis that the conveyances were made only because of the design, fraud and over-reaching of appellant.

For reversal, appellant contends that the trial court's finding is clearly erroneous, or clearly against the pre-ponderance of the evidence. We agree, and we must reverse and remand.

The parties were married in February 1978 when appellee was 43 years of age, appellant 40. It was appellee's first marriage and appellant's second. The parties separated on April 15, 1981 and appellee filed his complaint in this cause on April 16, 1981.

In 1972 appellee entered his family's farm equipment business, Perrin and Son, Inc., and started buying 49 of his father's 50 shares of stock in the corporation. He finished paying for the 49 shares in 1979. Appellee's brother, Nuel Perrin, owns the remaining 50 shares of stock in the corporation. Appellee, at the time of the marriage, also owned a 1/2 interest in four acres of land in Fort Smith upon which the business of Perrin and Son, Inc. was located.

On August 30, 1979, appellee conveyed his undivided 1/2 interest in the four acres of land to "Royce D. Perrin and Hazel Marlene Perrin, husband and wife, Tenants by the Entirety." On October 23, 1979, appellee caused a stock certificate to be issued for 49 shares of Perrin and Son, Inc. stock to "Royce D. Perrin and Hazel Marlene Perrin." The certificate was signed by Nuel Perrin, appellee's brother, as President of the corporation, and Hack Perrin, appellee's father, as Secretary. In addition to the foregoing transfers, which were set aside by the trial court's decree, appellee conveyed his undivided 1/4 interest in lands located in Oklahoma to himself and appellant as tenants by the entirety. The trial court declined to make a finding with

reference to the Oklahoma real estate, and that determination has not been appealed.

Appellant initially argues that the Arkansas Supreme Court has jurisdiction of this case under Rule 29 (1) (p) of the Rules of the Supreme Court, which lodges jurisdiction in that court for cases involving the construction of deeds or wills. However, we find that the issue in this case does not require a construction of a deed, but rather whether appellant was guilty of such fraud and overreaching as to defeat a gift of property made to her by her husband. For that reason, we will retain jurisdiction of this case.

Two specific findings by the trial court we find to be clearly against the preponderance of the evidence. The court stated:

. . . The Defendant admittedly married the Plaintiff for security and financial reasons only, and by reason thereof, and with design as hereinafter stated, the Defendant overreached the Plaintiff with reference to his properties . . .

and

. . . The entirety estate statute, A.S.A. 34-1215 should not apply in this case for the reasons the properties concerned were separately owned by Plaintiff prior to and during the marriage, and only put into the names of both parties due to the design, fraud and over-reaching by defendant.

The only direct evidence in the record to show that appellant may have married appellee for financial reasons is contained in the deposition of Dr. Betsy Walloch, of Tulsa, Oklahoma, appellant's psychiatrist. Dr. Walloch stated that appellant told her that she married appellee for security and companionship. The single word "financial" cryptically appears in a report made at Dr. Walloch's clinic, but Dr. Walloch testified that she did not make the notation; that it was made by another doctor who did some of the intake for the clinic. Dr. Walloch did not feel that the fact that appellee

put assets of his in appellant's name helped her in her quest for security, as her basic need was emotional, not financial, security. Dr. Walloch testified that she had talked to both appellee and appellant, and that they both wanted their marriage to work.

There is scant circumstantial evidence to indicate that appellant married appellee for financial reasons. Appellee's financial standing was no doubt a factor, which is not uncommon, but there is considerable evidence that the marriage was important to appellant.

Soon after the marriage, the parties and appellant's brother purchased four duplexes in Fort Smith, and appellant worked extremely hard in cleaning and repairing them before they were rented. There was evidence, also, that appellant became bored with the marriage, and made frequent trips to visit her family out of state.

Basically, the parties had irreconcilable differences in outlook and personality: appellee did not like crowds and wanted to stay home; appellant wanted to go where the crowds were. Dr. Walloch observed that "I talked with him alone and with her and was very much struck by the fact they did not see anything alike." Each believed the other had a problem with alcohol. Appellee admitted that he had had trouble with drinking in the past, and there was evidence that appellant used alcohol to an excessive degree after taking prescribed medication. Appellant told Dr. Walloch that appellee's drinking was a big problem in their marriage, and appellee asked Dr. Walloch to caution appellant about her drinking.

In *Dunn v. Dunn*, 255 Ark. 764, 503 S.W.2d 168 (1973), the Arkansas Supreme Court held that where a confidential relationship exists between a donor or grantor and a dominant donee or grantee, then that donee or grantee must produce evidence to show that the instruments were freely and voluntarily executed. A confidential relationship based on faith and repose as well as the dominant position must be supported by testimony before the presumption of coercion will arise. In *Dunn*, the evidence was overwhelming that the

wife was the dominant partner in the marriage. When the parties were married, he was 68 and she was 47. Previously, the husband had suffered permanent brain damage from a stroke. A year later his first wife died. He proposed marriage to several different women, and one on a first date. He married the appellant six months after they met. A month later, he changed the terms of a revocable trust and conveyed all his real property and various savings accounts to their joint ownership. She acquired possession of all his passbooks and certificates of deposit. One week before appellant left her husband she cashed one certificate of deposit for approximately $15,000 and deposited $14,000 in a bank in her own name. There were several expert witnesses who testified that the husband had suffered severe brain damage and it would be difficult for him to function in some areas of life. Furthermore, due to the husband's mental deficiency he would depend on any person in whom he had trust and confidence. He suffered delusions from time to time and referred to his wife as "him" or "he." In viewing this evidence, the court held that the wife was the dominant personality in the marriage relationship and that the instruments were not freely and voluntarily executed.

In *Marshall* v. *Marshall,* 271 Ark. 116, 607 S.W.2d 90 (Ark. App. 1980), the evidence was strikingly similar to that in the *Dunn* case and this court found that the wife was the dominant personality in the relationship and that the burden would shift to her to show that the transfers were voluntarily made. In *Johnson* v. *Johnson,* 237 Ark. 311, 372 S.W.2d 598 (1963), the Arkansas Supreme Court held that a deed creating an estate by the entirety was properly set aside upon evidence that the husband was not in love with the wife at all, had married her for financial reasons, and that the husband was in fact in love with another man.

In a recent case, *Chrestman* v. *Chrestman,* 4 Ark. App. 281, 630 S.W.2d 60 (1982), this court reviewed the issue of a confidential relationship and dominant personality. In that case, the trial court held that the wife had practiced fraud and deceit from the inception of the marriage and that all transfers made to her were invalid because of such fraud. Evidence in support of that showed that during the first

eighteen months of the marriage, the wife acquired virtually every income-producing asset owned by the appellee prior to the marriage. The court noted that appellee testified that he had at first resisted her efforts to obtain control of these assets but later acquiesced; that every transfer was obtained at her insistence through documents prepared by her attorneys on her instructions; and that those documents were brought to him for execution late in the evening when he was intoxicated. In reviewing the evidence, this court held that the chancellor's decision was not clearly against the preponderance of the evidence and affirmed his holding.

In the instant case, there was virtually no evidence to suggest that appellant was the dominent personality in the relationship. The psychiatrist who examined appellant testified that she married for security and companionship but specifically stated that she did not think that the security she was seeking was financial. The psychiatrist further testified that when appellant found out that appellee had filed for a divorce, she became very depressed and wanted to save her marriage. Appellee testified that appellant had asked that the property be transferred in her name because she felt it would make her more secure. We believe that this evidence falls short of any showing of fraud or overreaching on the part of appellant and further, there is no evidence to suggest that appellant was the dominant personality in the marriage. In fact, the evidence suggests that when appellee made the transfers of the property in both of their names, he knew exactly what he was doing. Although he testified that he did not intend to make a gift to her when he transferred the property, he testified that he did transfer the property to help save the marriage and to try to make her happy. There was not even a suggestion in the record that appellee was mentally or physically handicapped when he made these transfers. To the contrary, the evidence reveals that appellee was a mature, successful businessman, influenced only by a natural desire to save his marriage. The transfers were perhaps unwise, but they were freely made, and appellee cannot be relieved of responsibility for his actions.

The rule in Arkansas is that the law presumes a gift when the donor registers legal title in a family member's

name. See *Festinger* v. *Kantor*, 272 Ark. 411, 616 S.W.2d 455 (1981); *Harrison* v. *Knott*, 219 Ark. 565, 243 S.W.2d 642 (1951). The chancellor did not apply this presumption because of his holding that appellant was guilty of fraud and overreaching. Since we find that there was no evidence to support this finding we will apply the presumption and find in favor of appellant. We hold that appellant and appellee own the four acres of property and the 49 shares of stock as tenants by the entirety and they are to be divided by the chancellor according to Ark. Stat. Ann. § 34-1215 (Supp. 1981).

Appellant also argues that the trial court erred in holding defendant in contempt of court. We decline to review this issue, since appellant has not shown how she was prejudiced by such holding. Although the trial court did hold appellant in contempt of court, the chancellor did not fine appellant or use any of his contempt powers. He merely insisted that appellant return the personal items belonging to appellee, and appellant can purge herself of the contempt order if she returns those items.

Appellant finally argues that the trial court erred in refusing to restore appellant's former name of Marlene Chidwood, as prayed in this action. It is true that the chancellor does have the power to restore appellant's former name to her under Ark. Stat. Ann. § 34-1216 (Supp. 1981). However, it seems that this issue was overlooked at the trial court level and never reviewed by the chancellor. On remand, we would instruct that the chancellor review the issue, and, in his discretion, consider the restoration of appellant's former name.

The decree of the chancellor is reversed and the cause remanded for the entry of an order not inconsistent with this opinion.