James P. O'FLARITY, Conservator of the Estate of Jessie E. O'Flarity *v.* Gloria M. O'FLARITY

CA 92-912 852 S.W.2d 150

Court of Appeals of Arkansas
Division II
Opinion delivered April 28, 1993
[Rehearing denied June 30, 1993.]

6

*W.J. Walker* and *Eichenbaum, Scott, Miller, Liles & Heister*, by: *Leonard L. Scott*, for appellant.

*Robert S. Laney*, for appellee.

JUDITH ROGERS, Judge. At issue in this appeal is the extent to which two co-depositors, Jessie E. O'Flarity and Gloria M. O'Flarity, appellee, own the funds in a joint account. Appellant, James P. O'Flarity, is conservator of the estate of his mother, Jessie E. O'Flarity. Appellant brings this appeal from the ruling of the probate judge that Jessie O'Flarity and appellee own fifty percent of the funds in the account in question.

Because of Jessie O'Flarity's failing health, appellant was appointed conservator of her estate in 1991. Acting in that capacity, he then withdrew all the funds from the joint account in question held in the names of "Gloria M. or Jessie E. O'Flarity." Appellee then brought suit to recover such sums, claiming ownership of the money in the account she and her mother had. The probate judge found that all of the funds in the account, which had an ending balance of $106,262.31, could not be traced but concluded that appellee and her mother, Jessie, each were entitled to fifty percent of the account.

On appeal, appellant first argues the probate judge erred in determining appellee was entitled to one-half of the joint account. In this regard, he asserts that appellee failed to carry the burden of proving a gift of the funds was made to her. We do not agree.

Appellee and her mother lived together from 1968 to 1991. In 1968, appellee opened an account under the names of "Gloria M. or Jessie E. O'Flarity." The account was taxed under appellee's social security number, and deposits to the account were made from appellee's social security, disability, and retirement Veteran's payments, as well as other sources. Jessie O'Flarity purchased a house in 1969 and a second house in 1970. In 1971, she deeded both properties to Jessie E. O'Flarity and Gloria Marie O'Flarity as joint tenants with right of survivorship. Jessie and Gloria lived in one house and rented the other. In 1989, both properties were sold, and the proceeds were ultimately deposited in the joint account. In connection with the sale of one

of the properties, the buyer executed a promissory note payable to both Jessie and Gloria, and the monthly payments were deposited in their joint account. Other funds contributed to the account were proceeds from the sale of school bonds originally purchased by Jessie and held jointly by Jessie and Gloria.

Appellee testified that she made additional deposits to the account from the proceeds of her individual savings account, the sale of personal property, and various insurance proceeds. She also stated that, during the twenty-three years she and her mother lived together, she took care of making all the deposits to and withdrawals from their joint account and that their living expenses were paid for in part from the account. She testified that she and her mother both provided the funds deposited in the account and that her mother had told her she wanted appellee to have such funds.

Appellee testified that she was the one that opened the bank account in 1968; because she was disabled, she put her mother's name on the account so that, if appellee died, her mother would have access to the money. She testified that all of her disability and social security checks were deposited into the account and that, in 1968, the monthly amount of those checks was approximately $1,000.00 and had increased to over $2,200.00 by the time of the hearing. She also testified that her mother had a separate bank account of her own, to which her mother deposited her own social security checks and various other funds. Gloria testified that she and her mother lived in one of the houses her mother had purchased and rented the other and that Gloria paid all of the taxes, insurance, and upkeep on the rental house. She stated that she was aware that her mother deeded both pieces of property to Jessie E. O'Flarity and Gloria Marie O'Flarity as joint tenants with right of survivorship and that her mother did so because she wanted appellee to have that property. She also testified that, upon the sale of one of those properties, she and her mother received $3,648.00 as a down payment and subsequently received the balance of the amount due on the property in the sum of $65,487.50. These sums were deposited in the joint account. Appellee stated the money was placed in that account because she paid all the bills and "[M]other wanted me to have it." She testified that the furniture from one of the houses was subsequently sold for approximately $8,000.00 and that those proceeds

were also placed in the joint checking account.

Appellee testified that, when the second piece of property was sold, she and her mother received a down payment of $3,904.50, which was deposited in the joint account. The buyers of the property also executed a promissory note in the sum of $70,000.00 payable to appellee and her mother; those monthly payments of $629.18 were also deposited in the joint account. Appellee also indicated that, in 1968, she had her own savings account at First Federal with a balance of $10,267.50 and that she subsequently closed out that account and transferred the money to the joint account she shared with her mother.

Appellee also testified that her mother had placed appellee's name on a Merrill Lynch account consisting of tax-free school bonds. She stated that, in January 1990, her mother sold the bonds and indicated she wanted appellee to have those proceeds. Appellee testified that, when her mother sold the bonds, Merrill Lynch sent the proceeds to her mother; her mother than gave the money to appellee and instructed her to deposit the funds in the joint account.

Gloria testified that her mother had also given money and property to other family members. In this regard, Gloria testified:

> [My mother] has refused to make a will because she said, "I want to distribute my stuff and take care of all my children and make sure they all have a home and every-thing they need before I go." And that's what she thought she had done. She said, "I don't want anybody fighting over my estate when I'm gone." And she said, "I'll give everybody their houses, homes, money, whatever they need." And she had just enough. She said, "I have enough in my account now to bury me, and everybody else has their own share now, and I'm happy."

Appellee indicated that she considered the funds in the joint account to be hers and that the only reason she initially put her mother's name on the account in 1968 was because "I wasn't expected to live when I got out of the service and I wanted whatever I had to go to Mother." She stated that her mother never exercised any control over the joint bank account, never wrote a check off of it, and never personally made any deposits

into the account.

Beverly Stamper, one of Jessie O'Flarity's daughters, testified that she lived in the Little Rock area until 1985. She testified she was aware of the transactions concerning the two pieces of real estate in question and that her mother had told her that, because appellee had taken care of the rental house, it should go to her and that the house in which the two of them lived was "their home." She stated that her mother was very generous with all of her children and had given each of them money or property from time to time.

James P. O'Flarity testified that, although he borrowed $25,000.00 from his mother on one occasion, he subsequently repaid it and that his mother never gave him large sums of money. He also testified that, in 1986 or 1987, his mother telephoned him and indicated that she was in dire financial straits and also indicated that Gloria "does her own thing." Therefore, appellant testified that, for the following year, he sent his mother $750.00 to $1,500.00 per month for her living expenses. He also testified that his mother had given him thirty-nine acres of property in east Mississippi, on which he has paid taxes since she deeded it to him. He stated that, when his mother's health failed to the point that he believed she needed additional care, Gloria refused to cooperate with family members concerning the records on his mother's bank account so that they could have access to funds to pay for her care. He testified that his mother put bank accounts and real estate in joint names for testamentary purposes and never intended to give away any of it during her lifetime. He also testified that, when the two parcels of property held in appellee's and his mother's names were sold, his mother did not endorse the checks and had no recollection of signing the deeds.

Mary Kathryn Rogers, another daughter of Jessie O'Flarity, testified that she has lived a few doors away from her mother since 1970 and that her mother and appellee took care of each other. She testified that her mother deeded a house on Louisiana Street to her in 1986, which she and her mother had previously owned as joint tenants with right of survivorship. She testified that her mother did not intend for Gloria to have all the funds in the joint account. In this regard, Mary Kathryn stated: "[My mother is] alert and she knows that all of this is going on and it grieves her

greatly. She says, 'I trusted Gloria with everything I had. I didn't think she could do this to me.' She knows that Gloria wants all of it and it's really grieving her."

■ The rule in Arkansas is that the law presumes a gift when the donor registers legal title in a family member's name. *Perrin* v. *Perrin*, 9 Ark. App. 170, 176, 656 S.W.2d 245, 248 (1983). Therefore, with regard to the proceeds from the sale of both parcels of real estate which were owned jointly by appellee and her mother, it is presumed that appellee is entitled to one-half of these amounts.

■ Whether elements of an effective *inter vivos* gift have been proven with regard to the school bonds and other sources of revenue to the account is a question of fact. *See Warren* v. *Warren*, 33 Ark. App. 63, 65, 800 S.W.2d 730, 731 (1990). The required elements for an effective *inter vivos* gift are that the donor knew and understood the effect of his act, and intended that effect; that the donor made actual delivery of the chattel to the donee or his agent; that the donor, by delivery, intended to pass title immediately; and that the donee actually accepted the chattel as a gift. *McCune* v. *Brown*, 8 Ark. App. 51, 57, 648 S.W.2d 811, 814 (1983). These elements must be proved by clear and convincing evidence. *Id. Accord Kelley* v. *Pipkin*, 268 Ark. 1009, 1014, 598 S.W.2d 102, 105 (Ark. App. 1980). Even where the burden of proof is by clear and convincing evidence, we defer to the superior position of the chancellor to evaluate the evidence. *Akin* v. *First Nat'l Bank*, 25 Ark. App. 341, 345, 758 S.W.2d 12, 19 (1988). A requirement that the evidence be clear and convincing does not mean that the evidence must be uncontradicted. *Freeman* v. *Freeman*, 20 Ark. App. 12, 15, 722 S.W.2d 877, 879 (1987). Although probate cases are reviewed *de novo* on the record, we will not reverse the finding of the probate judge unless clearly erroneous. *Winters* v. *Winters*, 24 Ark. App. 29, 34, 747 S.W.2d 583, 586 (1988); *Birch* v. *Coleman*, 15 Ark. App. 215, 221, 691 S.W.2d 875, 878-79 (1985); Ark. R. Civ. P. 52(a). In this regard, we give due deference to the probate judge's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Thomas* v. *Thomas*, 30 Ark. App. 152, 156, 784 S.W.2d 173, 175 (1990). We find the evidence sufficient to prove the elements of a gift regarding appellee's interest in the joint account and cannot say that the

finding of the probate judge that appellee is entitled to a fifty-percent share of the account is clearly erroneous.

The creation of joint bank accounts is addressed in Ark. Code Ann. § 23-32-1005(1)(A) (1987). However, the present wording of subparagraph (1)(A) was included by amendment, Act 843 of 1983, and the amendment does not apply to deposits established prior to the effective date of Act 843. *Courtney* v. *Courtney*, 296 Ark. 91, 95, 752 S.W.2d 40, 42 (1988); *see also Martin* v. *First Security Bank*, 279 Ark. 273, 274, 651 S.W.2d 70, 71 (1983). Instead, the former statute, Ark. Stat. Ann. § 67-521 (Repl. 1980), applies. That statute provides in pertinent part:

> When a deposit shall have been made in the names of two (2) or more persons and in form to be paid to any of the persons so named, such deposit and any additions, thereto made by any of the persons named in the account, shall become the property of such persons as joint tenants . . . .

In *Park* v. *McClemmons*, 231 Ark. 983, 334 S.W.2d 709 (1960), the supreme court held that § 67-521 should be considered together with the testimony, facts, and circumstances disclosed by the record to arrive at the intent of the depositor. 231 Ark. at 986, 334 S.W.2d at 712.

Based on this, the trial court could find that appellee intended to establish a joint tenancy when she created the account in question. Additionally, the record reflects that the actions of Jessie O'Flarity in commingling her funds with those of appellee in the account establish her intent to share such funds with appellee. Commingling of funds in a joint account leads to the conclusion that the parties intended all deposits to the account from whatever source to be held jointly by the parties, and it takes clear and convincing evidence to overcome this presumption. *See Lofton* v. *Lofton*, 23 Ark. App. 203, 209-10, 745 S.W.2d 635, 639 (1988). We cannot say that the actions of Jessie O'Flarity and appellee in dealing with the funds placed in the account fail to show an intent to own such funds jointly. We find there was insufficient evidence presented to overcome a presumption of owning the funds jointly.

Appellant also argues that Jessie O'Flarity, as a joint

tenant to the account, had the right to withdraw all of the funds in question and that, therefore, James P. O'Flarity, as conservator of the estate of Jessie E. O'Flarity, was equally entitled to exercise his mother's right to withdraw all of the funds in the account. While he may be entitled to withdraw the funds on her behalf, we cannot agree that he is entitled to retain the funds. Although a bank or savings and loan may rightfully pay all the funds in an account to either of the two co-depositors in a joint account, it does not necessarily follow that either of the co-depositors may withdraw such funds without accounting to the other co-depositor for such action. *See Savage* v. *McCain*, 21 Ark. Ap. 50, 52, 728 S.W.2d 203, 204 (1987); *see also McEntire* v. *McEntire*, 267 Ark. 169, 175, 590 S.W.2d 241; 244-45 (1979). Each depositor's right to the funds may depend on an agreement among the co-depositors as to their respective ownership rights in the account. *See Haseman* v. *Union Bank of Mena & Haseman*, 262 Ark. 803, 807, 562 S.W.2d 45, 48 (1978).

Appellant also asserts that the probate judge erred in finding that appellee was entitled to one-half of the proceeds of the promissory note from the sale of the property made payable to appellee and her mother. In this regard, appellant argues that the ownership of the note was not an issue before the court. We cannot agree. Appellee correctly points out that appellant's own counsel asked the judge about the disposition of the real estate promissory note. At the conclusion of the hearing, the judge announced her findings regarding the joint account and asked if there were any additional questions. Appellant's counsel responded: "Judge, we have a real estate note involving one of the sales, about '75." The court then responded: "Well, that would mean each one of you get one-half of that real estate note." No further discussion of the note took place. Not only did appellant's counsel fail to object to the issue being addressed by the court, but it was appellant's own counsel who invited a ruling on the issue. Additionally, we disagree with appellant's alternative argument that the evidence does not support a finding that appellee owns fifty percent of the proceeds of the note. When considering ownership of a note payable to two parties, we can look to cases dealing with notes payable to a husband and wife for guidance. In such a case, there is a presumption that the taking is by the parties as tenants by the entirety. *See Ramsey* v. *Ramsey*, 259 Ark. 16,

19, 531 S.W.2d 28, 30 (1975). The fact that the consideration for the note taken in the two names was given by only one of the parties is of little significance where that party is responsible for the note being taken in both names, and the presumption is that there was a gift of an interest by that party to the other. *See* 259 Ark. at 19, 531 S.W.2d at 30-31.

 Finally, appellant argues that the court erred in failing to grant a new trial pursuant to appellant's motion for rehearing and new trial. Arkansas Rule of Civil Procedure 59(a) (1992) provides in part:

> (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party: (1) any irregularity in the proceedings or any order of court or abuse of discretion by which the party was prevented from having a fair trial; (2) misconduct of the jury or prevailing party; (3) accident or surprise which ordinary prudence could not have prevented; (4) excessive damages appearing to have been given under the influence of passion or prejudice; (5) error in the assessment of the amount of recovery, whether too large or too small; (6) the verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to the law; (7) newly discovered evidence material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial; (8) error of law occurring at the trial and objected to by the party making the application.

Appellant, however, fails to state any of the reasons listed in Rule 59, which would provide a basis for granting a new trial. Further, appellant stated in his motion that a new trial should be granted so Jessie O'Flarity could have an opportunity to testify as to her intent concerning ownership of the funds in question. In this regard, appellant stated in his motion: "It was not deemed wise by counsel to put [Jessie O'Flarity] through the trauma of coming to court to testify inasmuch as no allegation of the petition of Gloria O'Flarity was support [sic] at trial." The fact that appellant failed to call Jessie O'Flarity as a witness at trial is not an adequate ground for granting a new trial. It is well settled that the

granting of a new trial addresses itself to the sound discretion of the trial court, and this court will not reverse unless it appears that the trial court abused its discretion. *Franklin* v. *Griffith Estate*, 11 Ark. App. 124, 128, 666 S.W.2d 723, 725-26 (1984). We find no abuse in the denial of appellant's motion.

Affirmed.

MAYFIELD and COOPER, JJ., agree.