COREY *v.* THE MERCANTILE INSURANCE COMPANY OF AMERICA.

4-7018             169 S. W. 2d 655

Opinion delivered March 22, 1943.

*Claude F. Cooper, Frank C. Douglas* and *T. J. Crowder,* for appellant.

*Reid & Evrard* and *Verne McMillen,* for appellee.

ROBINS, J.   The appellant, Mrs. C. S. Corey, brought suit in the lower court against the appellee, The Mercantile Insurance Company of America, to reform and recover judgment on a policy of fire insurance issued by the appellee on February 15, 1941. By this policy C. S. Corey was insured against loss or damage by fire in the sum of $1,500 on a dwelling house in Blytheville, Arkansas, and in the sum of $2,000 on the household goods and personal effects located therein. The policy contained a "mortgage clause" in favor of D. M. Moore, who was joined as a defendant by appellant in her suit. The appellant alleged in her complaint that she was the owner of the property insured, and that it was the intention of the appellee and herself that the policy be issued in her name, but that through mistake the policy was issued in the name of C. S. Corey, her husband, who had formerly owned the property. The appellee answered denying the material allegations of the complaint, and pleaded as affirmative defenses that the proof of loss had not been made as required by the policy, and also that the fire was of incendiary origin for which the appellant was entirely responsible. By way of cross-complaint the appellee alleged that it had become the

purchaser and assignee of the mortgage executed by Mr. and Mrs. Corey to D. M. Moore, and that it had paid to Moore the indebtedness secured thereby amounting to $1,599.40. It prayed that C. S. Corey be made party defendant, and that it have judgment against Mr. and Mrs. Corey for the amount paid by it to Moore. C. S. Corey filed answer admitting that he had executed the mortgage, but denying any indebtedness in excess of $880, and asking that the cross-complaint of the insurance company against him be dismissed for want of equity. D. M. Moore answered the cross-complaint of the insurance company and denied that he had collected any amount in excess of the amount owing to him by Mr. and Mrs. Corey. The appellant also denied any indebtedness to D. M. Moore in excess of $880, and alleged that, after her refusal to accept a less amount than the face of the policy, the insurance company wrongfully paid Moore the sum of $1,599.40 and procured an assignment of the indebtedness of the Coreys to Moore, for the purpose of forcing her by threats of foreclosure to accept an amount less than that due her.

The lower court found that the property in question was originally owned by C. S. Corey, and that he conveyed the real estate and personal property to his wife, the appellant, on April 20, 1937, reserving a life estate in all the property, and that thereafter the appellant and her husband mortgaged the real estate to D. M. Moore to secure the sum of $880 and future advances; that the insurance company issued the policy in question to C. S. Corey, and that it was not the intention to issue the policy to Mrs. C. S. Corey; that there was no such mistake in the issuance of the policy as to entitle the appellant to reformation of the policy; that the appellant and C. S. Corey were indebted to D. M. Moore in the sum of $1,599.40, secured by the real estate mortgage, which indebtedness, along with the mortgage securing same, had been assigned by Moore to the insurance company; and the lower court dismissed the complaint of appellant for want of equity, entered judgment in favor of the insurance company against Mr. and Mrs. Corey for the sum of $1,599.40 and interest, and ordered a foreclosure of the

mortgage. The decree was rendered by the chancery court on the 8th day of May, 1942, and appellant prayed and was granted an appeal on November 4, 1942. On December 14, 1942, C. S. Corey filed in this court motion for cross-appeal, in which he stated that he was aggrieved by the judgment in favor of the insurance company against him in the sum of $1,599.40, and prayed that he be granted an appeal therefrom.

C. S. Corey is not an appellee nor co-appellee in this case within the meaning of § 2772 of Pope's Digest of the statutes of Arkansas authorizing a cross-appeal. It has been frequently held by this court that a cross-appeal may be taken only by one against whom relief is asked by the appellant. The rule is thus expressed in the case of *Baldwin* v. *Brown,* 166 Ark. 1 (headnote 7), 265 S. W. 976: "An appeal by an appellee against a party who has not appealed is in effect an original appeal and must be prayed within six months from the rendition of the judgment." In Corpus Juris Secundum, vol. 6, p. 72, the term appellee is defined as follows: "The party against whom an appeal is taken, that is to say, a party who has an interest adverse to setting aside the judgment, . . ." There is no conflict of interest between C. S. Corey and Mrs. C. S. Corey, and, in order for C. S. Corey to obtain a review of the lower court's decree, it was necessary for him to appeal from the decree within six months from the date it was rendered. Since he has not done so, under the well settled rule of this court, we may not review any part of the decree of the lower court affecting C. S. Corey, or consider any alleged erroneous finding against him therein. It is, therefore, unnecessary for us to determine the effect of the retention of the premium by the insurance company after knowledge on its part that C. S. Corey was not the sole and unconditional owner of the property, because, at most, this could only amount to a waiver of its defense on this ground by the company in favor of C. S. Corey, who can not, for the reason stated above, be given any relief by this court.

The principal question arising on this appeal is whether or not the chancery court erred in refusing to

reform this policy. Kerr, in his work on Insurance, p. 149, makes this statement of the law: "Courts will enforce the contracts of parties, but cannot make contracts for them. A policy will only be reformed upon clear and convincing evidence that the insurer agreed to insure the insured in respect to some particular subject-matter upon terms mutually understood, and that the policy does not contain the agreement made by the parties. There must be proof of mutual agreement on the terms of the contract, and proof of mutual mistake, . . . in order that a decree reforming it may be granted." There is no testimony in this case upon which could be based a finding that the insurance company intended to issue the policy to Mrs. C. S. Corey. The insurance involved in this case was procured by the mortgagee, D. M. Moore, who had taken out a similar policy a year before. Mr. Moore testified that he directed the agency to renew the policy and charge the premium to his account. He further testified that he called on Mr. Corey for the insurance premium, but that Mr. Corey did not ever repay him, and that Mr. Corey knew that the policy was issued "this way"; that when he directed the issuance of the policy he did not know who was the owner of the insured property. This real estate and personal property had been originally owned by C. S. Corey, who conveyed it to his wife in 1937 by a deed under which he reserved a life estate in the property to himself. The clerk who issued the policy for the insurance agency testified that Mr. Moore authorized the issuance of the policy, and that she never heard of Mrs. Corey in connection with the property. In denying reformation of a policy of insurance issued under somewhat similar circumstances, the Court of Chancery Appeals of Tennessee, in the case of *Schmid v. Virginia Fire & Marine Ins. Co.*, 37 S. W. 1013, said: "Here the alleged omitted term, that the insurance was to be in the name of Mrs. Schmid, was in no way mentioned, or even intimated; but, on the contrary, the whole matter proceeded as if Rudolph Schmid were himself the real owner. But it is urged by complainant that it was the intention of the parties to create an effectual insurance upon the property, and that this was the real con-

tract; that the person in whose name the insurance issued was a minor consideration; that the insurance sought and granted was intended to cover the property for the real owner. This contention, however, is not sound, either in law or fact. As to the matter of law involved, a fire insurance contract is a contract of indemnity, made with a natural or legal person quod certain property. It is a personal contract, and the person with whom the contract is made is a matter of first consideration; indeed, vital. There is always an element of moral hazard in insurance. Hence the insurance company might be willing to insure a piece of property in the hand of one man, but would refuse to do so if it were owned by some certain other man. As to the question of fact suggested in the foregoing contention, it cannot be said, under the facts already found, 'that it was the intention to cover the property for the real owner.' The abstract idea of 'real owner' did not enter into the contemplation of the parties at all.''

There is no testimony whatever to justify a finding in this case that there was any intention on the part of the mortgagee to procure, or any intention on the part of the insurance company to issue, a policy of insurance payable to Mrs. C. S. Corey. The mutual mistake in this case, if any, was the erroneous assumption by Mr. Moore and by the agent who issued the insurance policy that Mr. Corey owned the property. But this is not the kind of mistake that will authorize reformation of a written contract. The rule is thus stated in Williston on Contracts, vol. 5, § 1549: ''If, because of mistake as to an antecedent or existing situation, the parties make a written instrument which they might have not made, except for the mistake, the court cannot reform the writing into one which it thinks they would have made, but in fact never agreed to make.'' Mr. Justice FRAUEN-THAL, speaking for the court, in the case of *Doniphan, Kensett & Searcy Railroad Company* v. *Missouri & North Arkansas Railroad Company,* 104 Ark. 475, 149 S. W. 60, said: ''In the case of *Goodrum* v. *Merchants & Planters Bank,* 102 Ark. 326, 144 S. W. 198, Ann. Cas. 1914A, 511, we said: 'To entitle a party to reform a written instru-

ment upon the ground of mistake, it is essential that the mistake be mutual and common to both parties; in other words, it must be found from the testimony that the instrument as written does not express the contract of either of the parties. It is also necessary to prove such mutual mistake by testimony which is clear and decisive before a court of equity will add to or change by reformation the solemn terms of a written instrument.' *Varner* v. *Turner,* 83 Ark. 131, 102 S. W. 1111; *McGuigan* v. *Gaines,* 71 Ark. 614, 77 S. W. 52. In all such cases, the question is, not what the parties would have intended but for a misapprehension, not what the parties would have intended had they known better, but, rather, did the parties understandingly execute the instrument, and does it express their intention at the time, informed as they were? Courts of equity will not reform a contract on the alleged ground of mistake when subsequent events show that something desired was omitted. Such courts may compel parties to execute their contracts, but can not make contracts for them. They may correct an instrument so as to make it conform to the agreement, but they can not correct bad judgment or the result of inattention or carelessness.'' In the light of the rule, as above expressed, as to the character of proof required in a case of this kind, we are unable to say from a review of the testimony that the chancellor's finding that the appellant is not entitled to a reformation of the policy is against the preponderance of the evidence.

The ''mortgage clause'' attached to the policy sued on herein contains the following language: ''Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other

securities; . . ." The mortgage (after a recital as to the note for $880) contains the following provision: "Now, if we shall pay said moneys, together with any sums advanced said mortgagors at the times and in the manner aforesaid, and all taxes and insurance, then the above conveyance shall be null and void, else to remain in full force." The mortgagee, D. M. Moore, who was a brother of Mrs. Corey, introduced the original note and mortgage, and testified in detail as to the various items of his account covering advances made by him under the mortgage in addition to the indebtedness represented by the note. His testimony as to these additional advances, and as to the amount due him, is contradicted in some particulars by the testimony of the Coreys, but the chancellor accepted Moore's version, and it cannot be said that his finding in this regard is against the preponderance of the evidence. The insurance company was acting within its rights under the terms of the policy when it paid off this indebtedness to Mr. Moore and took an assignment of the debt, and the mortgage securing same, and it was entitled to a decree for the amount of the note and account and for foreclosure of the mortgage for all of the debt secured by the mortgage. It is undisputed, however, that $82.22 of this account represented advances that had been made prior to the execution of the note and mortgage. In the case of *First National Bank of Corning* v. *Corning Bank & Trust Company*, 168 Ark. 17, 268 S. W. 606, this court, in construing a similar contract, held that the mortgage secured only the note recited in the mortgage and the advances made after the execution thereof, and did not secure indebtedness existing prior to the execution of the mortgage. The lower court erred in decreeing foreclosure against the appellant for the full amount of the account, including this indebtedness of $82.22 which was in existence at the time the note and mortgage were executed. The decree of the lower court is, therefore, modified so as to reduce the amount of the judgment against the appellant by the sum of $82.22, and as so modified the same is affirmed.