Earl GODWIN *v.* Burt T. HAMPTON d/b/a SOUTHERN
SCRAP CO., and Troyce HAMPTON

CA 83-304                                          669 S.W.2d 12

Court of Appeals of Arkansas
Division II
Opinion delivered May 9, 1984
[Rehearing denied June 6, 1984.]

*Woodward, Kinard & Epley, Ltd.,* by: *Mike Kinard,* for appellant.

*Larry Chandler,* for appellee Burt Hampton.

*Keith, Clegg & Eckert,* for appellee Troyce Hampton.

MELVIN MAYFIELD, Chief Judge. The appellee Burt Hampton filed suit in the Columbia County Chancery Court against appellant Earl Godwin alleging that because of false and material representations, knowingly made by appellant, appellee entered into a contract to purchase a Magnolia, Arkansas, scrap metal business from appellant, and as a result thereof appellee sustained damages. In addition to a money judgment, the appellee sought an injunction to prevent appellant from continuing to engage in business in competition with appellee, contrary to the provisions of the contract.

Godwin answered with a denial of the allegations of the complaint. He also filed a counterclaim against Burt Hampton and a third party complaint against Burt's father, appellee Troyce Hampton. The claims against the Hamptons alleged that they purchased the business as a partnership and Godwin sought judgment against them for $19,000.00 alleged to be due on the purchase price. An additional judgment for $100,000.00 was sought against the father on allegations that he caused Godwin mental anguish and monetary loss by attempting to abrogate the purchase agreement and by conspiring to prevent payment of the amount due on the purchase price. No motion was made to transfer any part of the case to law.

The chancellor found that one of the assets of the business was a crane which Godwin represented was operable and had been purchased for $25,000.00; that in fact it was not operable to do the job for which it was intended and Godwin had paid only $3,000.00 for it; that Burt Hampton agreed to a $25,000.00 increase in the purchase

price of the business in reliance upon Godwin's false representations about the crane; and that Hampton was entitled to damages for $22,000.00 which was the difference between the cost of the crane and what Godwin represented the cost to be. The court also found there was no partnership between the Hamptons, and that Godwin was not entitled to judgment against Troyce Hampton in any amount. The $22,000.00 due to Burt Hampton was offset against the $19,000.00 he owed on the purchase price, and Burt was given judgment against Godwin for $3,000.00. The chancellor found there was no proof that Godwin was competing against Burt contrary to the purchase agreement and, therefore, no ruling was made on the right to injunctive relief.

Godwin appeals and contends that the trial judge's decision as to liability is not supported by a preponderance of the evidence and that the judge erred in failing to rule on the validity of the covenant not to compete.

The parties are in agreement that the elements of an action for fraud or deceit are (1) a false representation, normally of fact, by the defendant; (2) knowledge or belief by the defendant that the representation is false — or, what is regarded as the equivalent, that he has not a sufficient basis of information to make the representation; (3) an intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation; (4) justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it; (5) damage to plaintiff, resulting from such reliance. *MFA Mutual Ins. Co.* v. *Keller,* 274 Ark. 281, 623 S.W.2d 841 (1981).

There is evidence in the record to support the following factual summary. Burt Hampton was about 25 years old when he entered into the agreement to buy the scrap metal business from Godwin. Burt had no prior experience in this business and his father helped negotiate the purchase and obtain the financing for Burt. Burt lived next door to the business and the purchase had been under discussion for some time. In April of 1981 a price of $30,000.00 was agreed upon but just before Burt started operating the business,

Godwin informed the Hamptons that he had purchased a crane from a scrap dealer in Dallas, Texas. Godwin told the Hamptons that he had paid $25,000.00 for the crane and that the sale price of the business would have to be increased to $55,000.00 to cover the amount paid for the crane. Both of the Hamptons testified that Godwin said the crane was operational and had been working on a yard in Dallas, and that in reliance upon his statements as to the crane's cost and condition they agreed to increase the purchase price to $55,000.00.

Burt started operating the business on April 21, 1981, and the crane arrived a few days later. On April 30, 1981, apparently the same day the crane arrived, Burt gave Godwin three checks which left him owing $19,000.00 on the $55,000.00 purchase price. On July 10, 1981, a formal written agreement to buy and sell the business was signed by Burt Hampton and Earl Godwin.

The crane was an old scrap railroad crane. Its function was to crush cars and load and unload scrap metal. When it was delivered to the Magnolia yard the magnet generator had a burned out coil. The truck engine would not run and the crane had to be pulled from place to place by another vehicle. The motor that ran the boom up and down would run but a chain had slipped to the side of the chain drive sprocket and some sprockets needed to be rebuilt. There was evidence of other defects in the crane and, although there was testimony that it should have been repaired for less, Troyce Hampton, who testified to extensive experience in automotive repair, filed a lien against the crane for $79,554.39, which he said was for repairs he made to the crane that were absolutely necessary.

A stipulation in the record agrees that the manager and assistant manager of the Dallas scrap company that sold the crane to Godwin would testify that it had been taken out of operation by that company approximately seven months before Godwin purchased it; that it was taken out of service because it became inoperable; that it was sold to Godwin for $3,000.00 and would not have been sold for that price if it had been useable and in working condition; and that they

discussed these facts with Godwin when he bought the crane.

Appellant's contention that the trial judge's decision as to liability is not supported by the evidence is presented in several ways. One argument is that Godwin increased the purchase price by $25,000.00 only because he decided the business was worth that much; but there was testimony, and the chancellor found, that Godwin said he was increasing the price because he gave $25,000.00 for the crane and "all he wanted was his money back." It is also argued that Burt relied upon his father in making the purchase agreement and not upon representations made by Godwin. It was Burt's testimony, however, that he would not have paid the extra $25,000.00 if Godwin had not told him this is what the crane cost and that all Burt would have to do would be to put gas and oil in it and it would be ready to go to work. These arguments simply present issues of fact which the trial judge decided in Burt's favor.

Godwin also points out that 78 days from the day the crane arrived Burt went to his own lawyer's office and signed a formal written agreement to buy the business. Thus, it is argued that both Burt and his father had ample opportunity to inspect the crane and determine its condition before the contract was signed and that this shows that Burt did not rely upon Godwin's representations about the crane; or that his reliance thereon was not justified; or that any misrepresentation was waived. Cases relied upon include *Herrick* v. *Robinson,* 267 Ark. 576, 595 S.W.2d 637 (1980); *Vaught* v. *Satterfield,* 260 Ark. 544, 542 S.W.2d 502 (1976); and *Mid-America Truck & Equipment* v. *Mack Trucks, Inc.,* 519 F. Supp. 461 (W.D.Ark. 1981). The last two cases turn upon the sufficiency of the evidence. In *Mid-America Truck and Equipment,* the court held (1) there was no misrepresentation because the plaintiff had knowledge of the matter involved and did not rely on the defendant's statement, and (2) plaintiff was not entitled to recover damages which it could have avoided after it learned of the matter involved. In *Vaught,* the court found that the plaintiffs not only failed to show that they did not know the facts claimed to have been undisclosed but also failed to show that those facts were not

within the reach of their own diligent attention or observation. In other words, they did not prove justifiable reliance upon the representations made.

Appellant's reliance upon *Herrick* v. *Robinson,* however, reveals the fundamental difference between Godwin's position and that taken by the Hamptons. That case involved an attempt to rescind a contract and the court said:

> One who desires to rescind upon the ground of fraud or deceit must, as soon as he discovers the truth, announce his purpose at once, adhere to it, and act with reasonable diligence, so that all parties may be restored to their original position as nearly as possible; if he continues to treat the property involved in the transaction as his own or conducts himself with reference to the transaction as though it were still subsisting and binding, he will be held to have waived the objection and will be as conclusively bound by the contract as if the fraud had not occurred.

*Herrick* v. *Robinson,* 267 Ark. at 585.

It is the Hamptons' position that the complaint filed in this case by Burt did not seek rescission but was a suit based upon the common law tort of fraud or deceit. *See MFA Mutual Ins. Co.* v. *Keller, supra.* They also point out that one who has been the victim of fraud may either affirm the transaction and sue for damages, or disaffirm and sue for rescission. *Stanford* v. *Smith,* 163 Ark. 583, 260 S.W.435 (1924). The complaint filed by Burt very clearly elected to sue for damages. Equity had jurisdiction because the suit also asked for an injunction to prohibit Godwin from violating the covenant not to compete. *Bailey* v. *King,* 240 Ark. 245, 398 S.W.2d 906 (1966). Unless equity is wholly incompetent to grant the relief sought, objection to its jurisdiction is waived if no motion to transfer to law is made. *Stolz* v. *Franklin,* 258 Ark. 999, 531 S.W.2d 1 (1975). However, no motion to transfer was made and in addition to jurisdiction to grant injunctions, equity is not wholly without authority to decide issues involving the elements of the tort of fraud or deceit. *Lane* v. *Rachel,* 239 Ark. 400, 389 S.W.2d 621 (1965).

So, the liability issue in this case is concerned with whether Godwin made the representations alleged; whether he knew they were false; whether Godwin intended for Burt to rely upon the representations; whether there was justifiable reliance by Burt to his damage; and whether any misrepresentation was waived. These are all questions of fact. It is our duty to affirm the factual findings of the trial judge unless they are *clearly* against the preponderance of the evidence, giving due rgard to his opportunity to judge the credibility of the witnesses. ARCP Rule 52(a); *Smith* v. *City of Little Rock*, 279 Ark. 4, 648 S.W.2d 454 (1983). We cannot say the trial judge was clearly wrong in deciding for Burt Hampton on the question of liability when we consider the evidence about Godwin's representations as to the cost and condition of the crane; the evidence of the increase in the purchase price of the business; and the evidence that all but $19,000.00 of the $55,000.00 purchase price was paid on the day the crane arrived in Magnolia and before either of the Hamptons knew of its true condition or what Godwin had actually paid for it.

This holding would seem to moot the partnership issue, although we cannot find the trial judge clearly wrong on that issue either.

This leaves the question about the trial court's failure to rule on the petition for injunctive relief on the covenant not to compete. Appellant suggests that the agreement may be against public policy, but the trial court found there was no proof that Godwin had gone into competition against Burt Hampton, and, therefore, "makes no decision as to whether said agreement is binding on the parties." We agree and also make no decision on that issue.

Affirmed.

CRACRAFT and COOPER, JJ., agree.