Paul Herbert WEDIN *v.* Irene Anne WEDIN

CA 96-236                                                           944 S.W.2d 847

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered May 7, 1997

[Petition for rehearing denied June 18, 1997.]

*Street, Seay & Caldwell, P.L.L.C.*, by: *Theresa L. Caldwell*, for appellant.

*Deborah A. Knox*, for appellee.

JOHN E. JENNINGS, Judge. Paul and Irene Wedin were married in 1963 and separated in July 1993. In September 1993 appellant filed suit for divorce in Baxter County Chancery Court. On October 14 the parties signed a property settlement agreement. The agreement provided: "Appellant will further divide with appellee any inheritance of personal property he may receive in the future from the Estate of Lucretta Wedin."

Lucretta Wedin, appellant's mother, died on October 25, 1993. On November 3, 1993, appellant was granted a divorce and the property settlement agreement signed by the parties was approved.

In January 1995 the appellee filed a petition in chancery to enforce the terms of the property settlement agreement and the trial court held a hearing focusing on the parties' differing interpretations of the clause at issue. It was shown that Lucretta Wedin had, on August 6, 1993, executed a trust agreement through which she placed virtually all her assets in an *inter vivos* trust. In the trust indenture she named herself as a trustee. Appellant and his sister, Jacqueline Cathers-Collision, were named co-trustees and were the sole beneficiaries of the trust. Lucretta Wedin's will, also dated August 6, 1993, left all her property to the trust. At her death the value of her property subject to probate was $600.00.

The appellee testified that during settlement discussions appellant told her that he was going to give her half of what he got from his mother. Appellant told her that the estate was valued at approximately $600,000.00 and that there would be about $190,000.00 in estate taxes payable. She testified that she had worked as a secretary in a law office but did not seek legal advice about the terms of the property settlement agreement. She testified that she was aware that some of Lucretta Wedin's property was in trust and understood that that property was included in appellant's inheritance.

Appellant testified that he did tell the appellee that he was going to split everything he got from his mother with her. He conceded that he told her that the total would be approximately $600,000.00 and that she would receive one-half of his one-half share. He received a little more than $200,000.00. He testified that appellee was aware that the trust existed.

He also testified however that he intended the clause to mean that appellee would receive only a share of the property he received through his mother's will. He further testified that he did not tell the appellee that the trust property would not be included and that if she had a misunderstanding about the agreement, he did nothing to correct it. At the time of the hearing appellant had

paid appellee some $23,000.00 but took the position that this was a gift and that he was obligated to pay no more than half of the $600.00 he received through his mother's will.

The chancellor found that the phrase "The Estate of Lucretta Wedin" was ambiguous. The chancellor also found that appellant stood in a confidential relationship to the appellee. Relying on our decision in *Undem v. First National Bank*, 46 Ark. App. 158, 879 S.W.2d 451 (1994), the chancellor held that appellant was estopped to argue that the trust assets were not included in his agreement.

■ On appeal to this court appellant contends that the chancellor erred in holding that the language of the clause in question was ambiguous, erred in finding that appellant had a duty to advise the appellee as to the meaning of the clause, and erred in effectively granting reformation of the agreement. We find no error and affirm. Chancery cases are reviewed de novo on appeal. *Lyons v. Lyons*, 13 Ark. App. 63, 679 S.W.2d 811 (1984). We do not reverse the findings of the chancellor unless they are clearly against a preponderance of the evidence. *Kunz v. Jarnigan*, 25 Ark. App. 221, 756 S.W.2d 913 (1988). If the chancellor reached the right result, we will affirm even if we disagree with the court's reasoning. *Durham v. Arkansas Dep't of Human Services*, 322 Ark. 789, 912 S.W.2d 412 (1995).

Appellant contends that the clause in the property settlement agreement is unambiguous. While he does not argue that the word "estate" is unambiguous, he contends that the word "inheritance" is. He relies on BLACK's LAW DICTIONARY, which defines "inheritance" as "property which descends to an heir on the intestate death of another."

■ ■ The initial determination of the existence of an ambiguity rests with the court. *C. & A. Constr. Co. v. Benning Constr. Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974). If an ambiguity exists, then the true intention of the parties must be determined and the meaning of the term becomes a question of fact. *See C. & A. Constr. Co., supra; Jones v. Jones*, 26 Ark. App. 1, 759 S.W.2d 42 (1988). BLACK's LAW DICTIONARY defines "estate" as "the degree, quantity, nature, and extent of interest which a per-

son has in real and personal property." BLACK'S LAW DICTION-ARY 490 (5th ed. 1979). The standard dictionary definitions are similar: "1. A landed property, usually of considerable size. 2. The whole of one's possessions, esp. all of the property and debts left by a dead person. 3. *Law.* The nature and extent of an owner's rights with respect to his property." AMERICAN HERITAGE DICTIONARY 466 (2nd College ed. 1982). It has been said that "the word 'estate' does not impart a legal entity." *Hansen v. Stanton*, 177 Wash. 257, 31 P.2d 903 (1934).

■ Similarly, the word "inherit" is not unambiguous. While *Black's* gives as a definition, "to take by inheritance; to take as heir on death of an ancestor," it notes that the word is also used in its popular sense as the equivalent of to take or receive. BLACK'S LAW DICTIONARY 704 (5th ed. 1979). The AMERICAN HERITAGE DICTIONARY defines inherit as: "1. To come into possession of; possess. 2. To receive (property) from an ancestor or another person by legal succession or will."

■ When we consider the prior discussions of the parties it is reasonably clear that they meant that appellant would share with the appellee that which he received from his mother's property after her death.

■ We would reach the same conclusion under section 201 of the RESTATEMENT (SECOND) OF CONTRACTS:

> (2) Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made
>
> (a) That party did not know of any different meaning attached by the other, and the other knew the meaning attached by the first party.

Under our view of the case it is not necessary to consider the question of estoppel or the chancellor's application of the principles stated in our decision in *Undem v. First National Bank, supra*. Finally, we do not agree that either the chancellor's holding, or our own, amounts to a reformation of the parties' agreement. The chancellor's holding was that appellant was estopped from

contesting the appellee's interpretation of their agreement. Our holding is that the appellee's interpretation conforms to the intention of the parties, as manifested by their words and actions.

For the reasons stated the decision of the chancellor is affirmed.

ROBBINS, C.J., BIRD, and ROAF, JJ., agree.

GRIFFEN and NEAL, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I cannot join the majority in affirming the chancellor's decree that held the appellant ex-husband was estopped from asserting that he was not obligated to pay his ex-wife half of the sums that he received from a revocable trust that his mother established before the parties divorced. Having also considered the law and the parties' arguments, I am firmly convinced that the chancellor's decree was clearly erroneous and that we should reverse. Therefore I dissent from the majority position and opinion.

Although the chancellor bottomed his ruling on *Undem v. First Nat'l Bank*, 46 Ark. App. 158, 879 S.W.2d 451 (1994), he explicitly relied upon a supposed "relationship of trust and confidence" between the parties in concluding that appellant misled appellee when his attorney submitted a property settlement agreement in which appellant agreed to "equally divide with Wife *any inheritance of personal property he may receive in the future from the Estate of Lucretta Wedin.*" (Emphasis added.) The chancellor concluded that appellee (the wife) relied on appellant's prior oral promises to give her half of whatever he got from his mother and that appellant had a duty to explain that the actual language of the property settlement agreement prepared by his attorney and forwarded to appellee after the divorce action was filed was different from his earlier promise. One can understand the chancellor's disapproval of what he considered appellant's failure to be forthright. However, that disapproval of the failure to be forthright neither justifies nor demands a finding that the parties shared a "relationship of trust and confidence" when all the relevant facts indicate otherwise. It also should not blind us to the plain rules of law

concerning contracts, division of property, and *inter vivos* gifts that compel reversal.

Contrary to the view that a relationship of trust and confidence existed between appellant and appellee when the property settlement agreement was prepared, submitted to appellee, and executed, the agreement plainly reads that on October 19, 1993, the parties were separated and were contemplating a divorce action in Baxter County, that their differences were irreconcilable, and that each had either retained or been afforded the opportunity to retain legal counsel in connection with drafting the agreement. Those facts have never been disputed by appellee who admitted that she had the opportunity to consult counsel in connection with the property settlement agreement. Appellee declined to consult counsel or even discuss the agreement with any of the twelve lawyers in the law firm where she worked.

Moreover, the language that appellee relies upon is clearly different from a promise to give her half of whatever appellant may have received from his mother because it is limited to half of the personal property inherited from his mother's estate. When the agreement was submitted to appellee by appellant's attorney, appellee knew that appellant's mother had created a trust and named appellant as a beneficiary; however, she made no effort to obtain a copy of the trust documents before signing the property settlement agreement. She did not inquire as to what property was in the trust and did not consult counsel concerning any impact that the trust had on the property settlement agreement. She knew that appellant had retained legal counsel and knew that she had already rejected the language of a previous property settlement agreement draft because she considered it different from what appellant had orally promised her. She knew that appellant's lawyer did not represent her, nor consult with her, that appellant had left her in Texas, moved to Arkansas, and did not intend to reconcile with her. In short, there was no plausible reason for appellee or any other person of ordinary insight to believe that the property settlement agreement that appellee received from appellant's lawyer in contemplation of their divorce action arose from anything remotely like a "relationship of trust and confidence."

The chancellor's decision is tantamount to an award of damages for the tort of deceit. However, appellee is not entitled to tort damages merely because her contract (the property settlement agreement) differs from what appellant promised, especially when she failed to exercise the reasonable diligence expected of anyone negotiating a contract for what she thought amounted to more than $100,000 by ascertaining whether the plainly different language of the proposed agreement was consistent with the oral promise that appellant made before his lawyer prepared the agreement. Even under a deceit theory, appellee's prospect for recovery would have been problematic because of the requirement that any reliance on her part be reasonable under the circumstances. *Medlock v. Burden*, 321 Ark. 269, 900 S.W.2d 552 (1995) (citing *Roach v. Concord Boat Corp.*, 317 Ark. 474, 880 S.W.2d 305 (1994)); *Godwin v. Hampton*, 11 Ark. App. 205, 669 S.W.2d 12 (1984). Of course, the chancellor's decision permits appellee to avoid these questions by construing the parties to have been in a confidential and trusting relationship when the evidence plainly shows that they were not.

Although I do not read the majority opinion to hold that divorcing parties enjoy a "relationship of trust and confidence" as a matter of law so that their oral promises to each other are actionable upon breach, I see no difference between that unsound proposition and the result reached by affirming the decree in this case. The majority purports to buttress its decision by reading the words "from the Estate of Lucretta Wedin" in the executed property settlement agreement to be ambiguous. The flaw in that reasoning is that even the appellee recognizes that the chancellor did not find the language ambiguous. The appellee has vigorously challenged the appellant's contention that the chancellor found the language in Paragraph 9 of the Joint Stipulation and Property Settlement Agreement ambiguous. Instead, appellee maintains that she was defrauded and that the appellant's allegedly deceptive conduct justified holding that he was estopped from relying upon the wording of the agreement. I do not understand how the majority is better situated to find an ambiguity in an agreement when the party who challenges that agreement does not find it ambiguous. I also do not understand how the majority is able to affirm the chancellor's

decision holding appellant estopped from relying upon the agreement due to a purported ambiguity that the chancellor has not found and which the party who contests the agreement does not assert.

Of course, it has long been the law in Arkansas that the initial determination of whether an ambiguity exists in a contract rests with the court as a matter of law. If the court finds that a contract term is ambiguous as a matter of law, then parol evidence is admissible and the meaning of the disputed term becomes a question of fact for the fact finder. *C. & A. Constr. Co., Inc. v. Benning Constr. Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974). When a technical term is used in a contract in a sense other than the ordinary meaning of the word, testimony is admissible to explain the meaning of the term and the question may be submitted to the trier of fact to determine in what sense the term was used. *Les-Bil, Inc. v. General Waterworks Corp.*, 256 Ark. 905, 511 S.W.2d 166 (1974). Although the chancellor in this case did not find the term "from the Estate of Lucretta Wedin" in the property settlement agreement ambiguous, he did observe that the term "estate" is used in a general sense to describe an interest in property so that when the agreement referred to "the Estate of Lucretta Wedin" at paragraph 9 it could have contemplated her property generally, her trust estate only, her probated estate only, or both her trust and probated estate. However, appellee has never contended that she was misled by the language of the agreement or that she signed it in the mistaken belief that it conformed to what appellant had orally promised. Her sole contention is that appellant failed to inform her that he changed his mind about what he would give her and, therefore, willfully induced her to sign an agreement that she would not have otherwise signed. That contention is bottomed upon the alleged "relationship of trust and confidence" mentioned previously, not an alleged ambiguity concerning the meaning of the term "the Estate of Lucretta Wedin."

If there was no relationship of trust and confidence between the parties, then the effect of the chancellor's decision and its affirmance is to reform the property settlement agreement. Again, the established rules of contract law applicable to property settlement agreements in divorce proceedings bar the way that the

majority seeks to travel. The supreme court stated the standard used for determining whether a party is entitled to reformation of a written contract in *McIntyre v. McIntyre*, 241 Ark. 623, 410 S.W.2d 117 (1966):

> We have consistently held that reformation of a contractual agreement will not be granted except upon clear, unequivocal and decisive evidence. [citations omitted] In *Corey v. The Mercantile Insurance Company of America*, 205 Ark. 546, 169 S.W.2d 655 (1943), we quoted the applicable rule with approval, as follows: "To entitle a party to reform a written instrument upon the grounds of mistake, it is essential that the mistake be mutual and common to both parties; in other words, it must be found from the testimony that the instrument as written does not express the contract of either of the parties. It is also necessary to prove such mutual mistake by testimony which is clear and decisive before a court of equity will add to or change by reformation the solemn terms of a written instrument."

*Id.* at 626-27, 410 S.W.2d at 119. Here there is no proof that a mutual mistake occurred. As appellee has observed in her brief, neither party contends that there was a mistake, and she did not ask that the property settlement agreement be reformed.

It is self-evident that the parties enjoyed no "relationship of trust and confidence" so as to justify a holding that appellee was justified in blindly trusting whatever agreement that appellant's attorney tendered for her signature. It is equally plain that appellee has not contended that the written agreement contains ambiguous language upon which she relied believing it to be consistent with appellant's oral promise to her before the agreement was prepared. The only remaining basis for affirming the chancellor's decision is to reform the agreement to mean what neither party contends that they ever thought it meant. That is nothing short of imposing upon the parties a property disposition that one party (appellant) clearly does not want, and the other party (appellee) has not won through negotiation despite having every opportunity to try to do so.

No matter what our view may be about appellant's decision to abandon his original position toward appellee, the fact remains that appellant had the right to change his mind about what he

wanted to give appellee in the property settlement. She had the right to disagree with his changed position and reject the property settlement agreement that reflected that changed position. But appellee has no right to acknowledge that the agreement she signed was not misleading, acknowledge that neither party mistakenly executed it, and acknowledge that she refused to seek any advice about what it meant, yet be awarded a property settlement that she refused to negotiate and which nobody else has ever determined she otherwise has the right to obtain.

Despite appellee's disappointment about appellant's change of mind, she has no right to receive *anything* that appellant obtained by inheritance from his mother in a property settlement agreement terminating their marriage, and appellant had no duty to give her anything that his mother gave him. Ark. Code Ann. § 9-12-315 (Repl. 1993) prescribes how property is divided. Subsection (a)(1)(A) provides that all *marital property* shall be divided one-half to each party unless the court finds that division to be inequitable. Subsection (b)(1) states that "marital property" means all property acquired by either spouse subsequent to the marriage *except* property acquired prior to marriage, or by gift, or by bequest, or by devise, or by descent. Whether the property that appellant received upon his mother's death passed to him by operation of her Will (by bequest), by virtue of the trust she created (by gift or bequest), or as her heir (by descent), Arkansas law plainly holds that it was not marital property to be divided with appellee upon divorce. Appellant was *not* obligated to share it with appellee, and no court is authorized to take it from him to satisfy a property settlement. Perhaps this explains why appellee has not attempted to have the property settlement agreement declared void and has not asked the chancellor to divide the *marital* property according to the statute.

The majority has cited no authority for the proposition that property obtained by a spouse from his parent by gift, bequest, or descent must be shared with the other spouse when they divorce. There was no proof that appellant ever put the property that he obtained after his mother died in a joint account with appellee. Therefore, we have no basis for holding that appellee had a *right* to anything.

Appellee argues that we should endorse her contention because appellant gave her $23,400. Had the parties remained married and appellant gave appellee that amount, what law holds that she would be entitled to recover another part of appellant's inheritance? Appellee has cited none. Neither does the majority.

When did we abandon the test for *inter vivos* gifts that has existed in Arkansas for most of this century? According to our law, the essential elements of an *inter vivos* gift include (1) actual delivery of the subject matter by the donor to the donee or the donee's agent, (2) clear intent to make an immediate, present, and final gift beyond recall, (3) knowledge and understanding on the part of the donor regarding the effect of his act, and (4) actual acceptance of the property by the donee. *O'Flarity v. O'Flarity*, 42 Ark. App. 5, 852 S.W.2d 150 (1993). Here appellant did not make an immediate and unconditional gift to appellee. He did not make actual delivery of half of what he received from his mother. Appellee did not accept half of what appellant received from his mother because he never gave it to her. None of the well-settled elements for an *inter vivos* gift have been proven by clear and convincing evidence or otherwise.

If voiding the agreement is warranted, we should reverse and remand so that appellee can negotiate an agreement or receive an equitable property settlement pursuant to Ark. Code Ann. § 9-12-315. Absent grounds for voiding the agreement, (and I have found none), we should not impose a property settlement upon appellant by judicial fiat merely because we dislike his failure to be forthright about changing his mind, or because he changed his mind after talking with his lawyer. Appellant had the right to change his mind and the right *not* to give appellee any part of what he inherited from his mother; thus, appellee has *not* been wronged by the change of mind, only disappointed. Until now the law has not treated disappointment as fraudulent concealment, deceit, or misrepresentation. Until now appellate courts have not disregarded the plain language of Ark. Code Ann. § 9-12-315 merely to soothe the disappointment of a divorced party. Until now we have not ignored the legal requirements for *inter vivos* gifts simply because a putative donee is displeased that a putative

donor changed his mind. This case is not the place to begin doing so.

I would reverse.